UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KERI SPRING; EUGENE SPRING; JULIANNE
SPRING;  EUGENE  SPRING  and  KERI
SPRING  on  behalf  of  GREGORY  SPRING;
and  KERI  SPRING,  as  the  duly  appointed
administrator  of  the  ESTATE  OF  GREGORY
SPRING,

                                   Plaintiffs,

          v.                                                    **DECISION AND ORDER**
                                                                  14-CV-476S

ALLEGANY-LIMESTONE CENTRAL SCHOOL
DISTRICT, *et al.*,

                                   Defendants.

## I. INTRODUCTION

Plaintiffs commenced this action in June 2014 asserting claims pursuant to 42

U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("A.D.A.");

the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act"); New York Civil

Rights Law § 79-n; New York Estate Powers & Trusts Law § 5-4.1; and New York State

common law.  Following the filing of motions to dismiss the Complaint by several of the

Defendants, Plaintiffs timely filed an Amended Complaint as of right, thereby mooting

the initial motions.   Presently before this Court are Defendants' subsequently filed

motions to dismiss the Amended Complaint.

This action follows the tragic suicide of high school student Gregory Spring on

June 17, 2013.  As described in the Amended Complaint, Gregory was a special

education student who suffered from disabilities including, but not limited to, Tourette's

Syndrome, ADHD, and Callosum Dysgensis.[1] (Am Compl ¶¶ 32-33.)  Plaintiffs allege that for an extended period of time during middle school and high school, Gregory "was subjected to numerous acts of fear and intimidation including, but not limited to, teasing, taunting, bullying, name calling, violence, offensive touching, hitting, interference with relationships, and public and private humiliation – conduct motivated in whole or part by his disabilities." (Am Compl ¶ 41.)  This conduct was "minimized, dismissed and ignored by the school district's staff and officials, including the named Defendants." (Am Compl ¶ 41.)

Plaintiffs' more specific allegations describe an incident in April 2012 when Gregory was disciplined and removed from the school's baseball team as a result of "horseplay" by Defendants Eric Hamphill and Christopher Kenyon, who were both teachers and coaches. (Am Compl ¶ 49.)  "These Defendants tolerated the same or similar horseplay and conduct by others without disability and then allowed Plaintiff to be ridiculed by teammates without consequence." (Am Compl ¶ 49.)  Plaintiffs further assert that:

> Defendant Kenyon failed to take action to stop or prevent further torment of [Gregory,] causing him severe emotional distress and a manifestation of his disabilities to react and he used a swear word referencing the team. Defendant Kenyon implemented further discipline and sent Gregory home early from practice and notified his mother, Plaintiff Keri Spring, that Gregory was removed from the team.

(Am Compl ¶ 50.)

Further, on November 8, 2012:

In response to unrelenting harassment and bullying by [fellow student]

---

[1] Plaintiffs offer no detail regarding this alleged disability.  The "corpus callosum" is the "great band of commissural fibers uniting the cerebral hemisphere." Merriam Webster's Medical Desk Dictionary at 145 (1993). Dysgenesis refers to defective development.  Id. at 196.

> Defendant Michael Easton, Gregory Spring physically responded to Easton.  Upon information and belief, Gregory Spring's conduct was a manifestation of his disability.   Gregory Spring was immediately suspended and punished by Defendant [Assistant Principal] Straub for this incident.   No manifestation hearing[2] was provided or waived by Plaintiffs even though multiple students came forward to support Gregory's claim that said student engaged in acts of bullying toward him.   Upon information and belief, Defendant Straub failed to discipline [Easton].

(Am Compl ¶¶ 21, 27, 42.)  Plaintiffs further allege that following this incident, Defendant Easton, "with the aid, encouragement, sanction, and facilitation of the School District Defendants, on or about November, 2012 initiated criminal prosecution against Gregory Spring.  Upon information and belief, Defendant Straub met with Defendant Easton and his parents, encouraged and facilitated the contact of law enforcement authorities to bring charges against Gregory Spring." (Am Compl ¶ 56.)   Defendants Easton and fellow student Defendant Jacob Roewe subsequently escalated their harassment of Gregory, and although Gregory's mother, Plaintiff Keri Spring, met with Defendant Straub on "no less than six (6) different occasions between January and June 2013" to complain "regarding Defendant Easton and his behavior," no action was taken against Easton. (Am Compl ¶ 56.)

Plaintiffs also allege that "[d]ue to Defendants' acts and omissions, including negligence, gross negligence, recklessness and/or deliberate indifference to disabilities, bullying, and discriminatory conduct against Gregory Spring, they caused him severe

---

[2] Under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, a child with a disability who is found to have violated a code of student conduct is entitled to a determination whether the violating conduct was caused by or related to the student's disability or the school's failure to implement the child's individualized education plan prior to any change in the child's educational placement.  20 U.S.C. § 1415(k)(1)(E). Because Plaintiffs are not asserting a violation of IDEA or a § 1983 claimed based on such a violation (see Pls' Mem in Opp'n at 8-15, Docket No. 49), this Court need not consider whether a sufficient change in placement has been alleged here. Honig v. Doe, 484 U.S. 305, 326, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) (finding that a suspension for ten days or more constitutes a change in educational placement within the meaning of IDEA, but deferring to Department of Education's position that suspensions shorter than that did not).

emotional distress, humiliation, embarrassment, and self-loathing causing and/or contributing to his suicide on June 17, 2013." (Am Compl ¶ 54.) Two days after Gregory's suicide, on June 19, 2013, Defendant Diane Lowry, a teacher's assistant, "authored and spoke statements and posted comments via internet and on-line pertaining to Gregory Spring and his death, falsely accusing him of misconduct and otherwise disparaging him and inflicting severe emotional distress upon the Plaintiffs herein."[3] (Am Compl ¶¶ 22, 57.) "Upon information and belief, Defendant Lowry breached her duty to protect the rights of students and also violated Gregory Spring's constitutional and educational rights of confidentiality concerning his education and records therefore." (Am Comp ¶ 58.)

For the reasons that follow, the motions of the School Defendants and Diane Lowry[4] (Docket Nos. 40, 42) are granted to the extent that these Defendants seek dismissal of Plaintiffs' first seven causes of action. (See Koch Decl ¶ 6, Docket No. 40-1 (Defendant Lowry incorporated by reference the arguments of codefendants).) The remainder of these motions, as well as the motions for dismissal of Defendants Roewe and Easton (Docket Nos. 60, 62), are dismissed as moot inasmuch as this Court declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[3] The specific statements or contents of the comments are not described in the Amended Complaint.
[4] "The School Defendants" as referenced hereinafter refer to Defendants Allegany-Limestone Central School District; the Board of Education of the School District; Karen Geelan, Superintendent; Joe Zimmer, President; Phil Quinlan, Vice President; Matthew Kahn, Member; Jeff Black, Member; David Farrell, Member; Jay King, Member; Kim Palmer, Member; Sue Schifley, Member; Maggie Nuss, Member; Kevin Straub, Principal or Assistant Principal, depending on where referenced; Eric Hemphill, Teacher/Coach; Christopher Kenyon, Teacher/Coach; John Wolfgang, Psychologist; and Robert Decker, Psychologist. The Court notes that Defendant Diane Lowry is separately represented and has separately moved for dismissal of the claims against her.  Nonetheless, to the extent that Plaintiffs allege claims against the "School District and its Defendant employees and agents," the Court will construe the claim as being asserted against both the School Defendants and Lowry.

## II. DISCUSSION

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12 (b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (assumption of truth applies only to factual allegations and is inapplicable to legal conclusions). As summarized by the Supreme Court:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atl. Corp. v.] Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S. Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

Iqbal, 556 U.S. 662, 677-78.   Instead, in order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98.

## A.   Constitutional Claims

Plaintiffs' first five causes of action allege that "Defendants Allegany-Lim[e]stone School District and its Defendant employees and agents," presumably although not

clearly referencing all named Defendants save the two students, violated the rights of Gregory Spring and his mother, Plaintiff Keri Spring, under the U.S. and New York state constitutions.   The first three causes of action seek damages for these violations pursuant to 42 U.S.C. § 1983.   This section imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.   See 42 U.S.C. § 1983.   Section 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.   Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

With respect to the individual defendants, liability under § 1983 may be imposed only for an actor's personal involvement in a constitutional tort, and may not be imposed under a theory of vicarious liability.   See Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (individual liability may not be based merely on a position of high authority).   Prior to the Supreme Court's decision in Iqbal, it was generally held that the personal involvement of a defendant, particularly supervisors, could be shown by allegations that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995); Back, 365 F.3d at 127.   In Iqbal,

however, the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," finding that "purpose rather than knowledge" was relevant to the issue of liability. 556 U.S. at 677.

The Second Circuit has acknowledged, but not expressly held, that all five Colon factors may no longer be applicable post-Iqbal. See Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014) (acknowledging the issue but not deciding the exact contours of the supervisor liability test post-Iqbal); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations"). Instead, the Court, as well as several district courts, have highlighted the Supreme Court's emphasis that the factors necessary to establish a Bivens claim, the federal counterpart to the § 1983 state actor claims at issue here, "will vary with the constitutional provision at issue." Iqbal, 556 U.S. at 676 (a First or Fifth amendment invidious discrimination claim must state that the defendant acted with discriminatory purpose); see Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015) (the proper inquiry is not dependent on the name bestowed upon a particular theory or standard, but rather whether that standard reflects the elements of the underlying constitutional tort); see also Grullon v. City of New Haven, 720 F.3d at 139; Lloyd v. City of New York, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014); Thompson v. Pallito, 949 F. Supp. 2d 558, 574-75 n. 12 (D. Vt. 2013); Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009).

With respect to the School District and the School Board, these entities are considered "persons" within the meaning of § 1983 and subject to suit under that

provision.  Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011); Huff v. West Haven Bd.
of Educ., 10 F. Supp. 2d 117, 121 (D. Conn. 1998).   However, as municipal entities,
these defendants cannot be held liable under a *respondeat superior* theory, but instead
liability will attach only if a violation of right resulted from the " 'government's policy or
custom, whether made by its lawmakers or by those whose edicts or acts may fairly be
said to represent official policy.' " Nagle, 663 F.3d at 116 (quoting Monell v. Dep't of
Soc. Serv. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611
(1978)).  Further, absent an underlying constitutional violation, a Monell claim against a
municipality cannot lie. Rankel v. Town of Somers, 999 F.Supp.2d 527, 550 (S.D.N.Y.
2014) (citing Segal v. City of N.Y.,  459 F.3d 207, 219 (2d Cir. 2006) (Monell does not
create a separate right of action)); see Chambers v. North Rockland Central Sch. Dist.,
815 F. Supp. 2d 753, 772 n. 16 (S.D.N.Y. 2011) (no need to address Monell claim
where court concluded the individual defendants did not violate plaintiff's substantive
due process rights); Vassallo v. Lando, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (no
Monell claim can lie against a municipality absent an underlying constitutional violation
committed against a plaintiff by the individual defendants).  The Court will therefore first
consider the claims that individual Defendants have committed constitutional violations.

    1. Failure to Protect

    Plaintiffs' first cause of action on behalf of Gregory alleges a violation of the
Fourteenth Amendment because:

> Gregory Spring and Defendants Allegany-Lim[e]stone School District and
> its Defendant employees and agents had a special relationship whereby
> Defendants had a constitutional duty to protect Gregory Spring.
> Alternatively, said Defendants exposed Gregory Spring to danger by
> implicitly and explicitly condoning or allowing acts of bullying against
> Gregory Spring, and subjecting him to discipline and otherwise treating

him disparately as to other students/instigators and allowing faculty to speak negatively about Gregory Spring in the presence of students and to his parents.

(Am Compl ¶ 67.)   Plaintiffs further allege that "Defendants were deliberately and/or recklessly indifferent to the continuous bullying, harassment and discrimination against Gregory Spring thereby breaching their constitutional duty." (Id. ¶ 68.)

As the School Defendants note, although not expressly stated, this claim appears to allege a violation of substantive due process under the Fourteenth Amendment. (Sch Def Mem of Law at 17, Docket No. 42-6; see Pls' Mem in Opp'n at 8-15, Docket No. 49 (confirming Plaintiffs' § 1983 claims are for substantive due process, equal protection, and first amendment retaliation violations).)   The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 194, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).   A claim that a plaintiff was deprived of a liberty interest in freedom from unjustified intrusions on personal security as a result of a defendant's failure to protect invokes the substantive rather than procedural component of the Due Process Clause. Id. at 195.   However, this clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." Id.   Thus, as recognized by the Supreme Court in DeShaney, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id.

There are two recognized exceptions to the DeShaney rule:

First, the state or its agents may owe a constitution obligation to the victim of private violence if the state had a 'special relationship' with the victim.

9

> Second, the state may owe such an obligation if its agents "in some way
> had assisted in creating or increasing the danger to the victim."

Matican v. City of N.Y., 524 F.3d 151, 155 (2d Cir. 2008) (internal citations omitted), *cert denied*, 555 U.S. 1047 (2008); see Ying Jing Gan v. City of N.Y., 996 F2d 522, 533 (2d Cir. 1993); P.W. v. Fairport Central Sch. Dist., 927 F. Supp. 2d 76, 81 (W.D.N.Y. 2013); Chambers, 815 F. Supp. 2d at 763-64.

Here, although Plaintiffs referenced a "special relationship" in the Amended Complaint (¶ 67), that theory appears to be appropriately abandoned in Plaintiff's opposition. (Pl's Mem in Opp'n at 8-9, Docket No. 49 (arguing only that there is sufficient affirmative conduct alleged to sustain a due process claim "on the basis of the state created danger theory").) "[C]ourts in this Circuit and others addressing cases of peer-on-peer bullying in schools have held that the special relationship doctrine does not apply in the public school context, even if school attendance is compulsory." P.W., 927 F. Supp. 2d at 81-82 (collecting cases); Chambers, 815 F. Supp. 2d at 764 n. 10; see also Reid v. Freeport Public Sch. Dist., -- F. Supp. 3d --, 2015 WL 869009, *6 (E.D.N.Y. 2015); Crispim v. Athanson, 275 F. Supp. 2d 240, 246-47 (D. Conn. 2003).

Under the "state-created danger" exception to DeShaney, "a plaintiff seeking to state such acclaim must show more than the State's general knowledge of a danger; he must show that the State assisted in 'creating or increasing the danger that the victim faced at the hands of a third party.' " Campbell v. Brentwood Union Free Sch. Dist, 904 F. Supp. 2d 275, 280 (E.D.N.Y. 2012) (quoting Matican, 524 F.3d at 157). Passive conduct, such as the failure to punish, does not fall within this exception; instead, there must be an affirmative act on the part of a defendant. Pena v. DePrisco, 432 F.3d 98, 109-10 (2d Cir. 2005) (comparing Hemphill v Schott, 141 F.3d 412 (2d Cir. 1998) (police

10

officers' actions in allowing store manager to join in pursuit of suspect and returning the manager's gun he then used to shoot plaintiff created or increased the danger) with Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994) (no constitutional violation when off-duty police officer failed to stop another off-duty police officer from shooting a houseguest); see Campbell, 904 F. Supp. 2d at 280; Reid, 2015 WL 869009 at *6-7.

Here, with few exceptions, the majority of the allegations in the Amended Complaint are not attributed to any specific individual Defendant. Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations. See Atuahene v. City of Hartford, 10 F. App'x. 33, 34 (2d Cir. 2001) (even under a liberal pleading standard, dismissal of constitutional claims warranted where plaintiff "lump[ed] all the defendants together in each claim and providing no factual basis to distinguish their conduct); Thomas v. Venditto, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (citing Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 723 n.4 (S.D.N.Y. 2012)). Further, to the extent Plaintiffs do state more specific allegations, the conduct alleged is the failure to adequately discipline and supervise. (Am Compl ¶¶ 42 (Defendant Straub failed to discipline Easton), 45 (Defendants Geelan, Straub, Schifley, and King failed to correct ongoing bullying and harassment), 49 (Defendants Hemphill and Kenyon tolerated horseplay by other students).) Such allegations are insufficient to plausibly state a substantive due process claim based on a state-created danger. P.W., 927 F. Supp. 2d at 83 (allegations that named defendant inadequately responded and disciplined student bullies insufficient to state a claim); H.B. v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881, 2012 WL 4477552, *10-11

(S.D.N.Y. 2012); <u>Chambers</u>, 815 F. Supp. 2d at 770-71 (failure to prevent verbal harassment, including bullying, does not in and of itself rise the level of a constitutional violation) (collecting cases); <u>Scruggs v. Meriden Bd. of Educ.</u>, No. 03–CV–2224, 2007 WL 2318851, *12 (D.Conn. Aug. 10, 2007) (state-created danger theory does not impose duty on defendants to protect students from bullying and harassment even where school knew about danger) (collecting cases).

  2. <u>Equal Protection</u>

  Plaintiffs' second cause of action alleges that Gregory was discriminated against on the basis of his disabilities and treated disparately in comparison to non-disabled students. (Am Compl ¶ 72.) "[S]aid disparate treatment was, upon information and belief, intentional and based on his disabilities." (<u>Id</u>.)  "*Inter alia*, Defendants Allegany-Lim[e]stone School District and [its] Defendant employees and agents failed to take action to protect Gregory Spring from bullying, harassment and discrimination because of his disabilities as well as themselves engaging in discrimination because of his disabilities." (Am Compl ¶ 73.)

  Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To maintain an equal protection claim, a Plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Miner v. Clinton County</u>, 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks, brackets, and citation omitted), *cert denied*, 556 U.S.

1128 (2009); G.D.S. ex rel. Slade v. Northport-East Northport Union Free Sch. Dist., 915 F. Supp. 2d 268, 277 (E.D.N.Y. 2012).   It must also be shown that the alleged disparity in treatment cannot survive the appropriate level of scrutiny.   Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005); see Morales v. New York, 22 F. Supp. 3d 256, 274-75 (S.D.N.Y. 2014).   To that end, a "disability is not a suspect classification under the Equal Protection Clause." Chick v. County of Suffolk, 546 F. App'x 58, 60 (2d Cir. 2013) (citing Suffolk Parents of Handicapped Adults v. Wingate, 101 F.3d 818, 824 n. 4 (2d Cir.1996), cert denied, 520 U.S. 1239 (1997)); Beckford v. Irvin, 49 F. Supp. 2d 170, 177 (W.D.N.Y. 1999).   As such, in order to determine whether there was a violation, this Court considers whether Defendants' alleged actions were rationally related to a legitimate government purpose. Pape v Bd. Of Educ. Of the Wappingers Ctl. Sch. Dist., No. 07-CV-8828(KMK), 2009 WL 3151200, *6 (S.D.N.Y. Sept. 29, 2009) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).

In their opposition to the School Defendants' motion to dismiss, Plaintiffs limit this claim to one based on deliberate indifference. (Pls Mem in Opp'n at 9-13, Docket No. 49.) "Courts have repeatedly held that teachers, administrators, and boards of education can be held liable under the Fourteenth Amendment if they have been deliberately indifferent to discriminatory harassment of a student at school by other children." Preston v. Hilton Cent. School Dist., 876 F. Supp. 2d 235, 244 (W.D.N.Y. 2012); G.D.S. ex rel. Slade, 915 F. Supp. 2d at 277; see Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999); see generally Davis v. Monroe Bd. of Educ., 526 U.S. 629, 651, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).   However, "[t]o succeed

on an equal protection claim in the harassment context, a student must show that he was afforded a lower level of protection as opposed to other students, and that this lower level of protection was the result of his [protected status]." <u>Preston</u>, 876 F. Supp. 2d at 244 (quoting <u>T.K. v. N.Y.C. Dep't of Educ.</u>, 779 F.Supp.2d 289, 316 (E.D.N.Y. 2011)).  To survive a motion to dismiss under Rule 12(b)(6), there must be sufficient allegations to show that each defendant's actions or inactions were unreasonable in light of the known circumstances.  <u>Preston</u>, 876 F. Supp. 2d at 244 (citing <u>Gant</u>, 195 F.3d at 141).  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations [and the] factual allegations must be sufficient to support necessary legal conclusions." <u>Ruston v. Town Bd. for the Town of Skaneateles</u>, 610 F.3d 55, 59 (2d Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 679); <u>Preston</u>, 876 F. Supp. 2d at 244-45.

Here, there are insufficient factual allegations to support a claim of deliberate indifference with respect to any individual defendant.  Plaintiffs' specific factual allegations – as opposed to the bare conclusory allegations that Defendants simply knew of and ignored student harassment of Gregory -- address only Defendants Straub, Hamphill, and Kenyon. (Am Compl ¶¶ 42, 49.) Defendants Hamphill and Kenyon are alleged to have removed Gregory from the school's baseball team in April 2012 as a result of "horseplay," despite having tolerated the same or similar horseplay and conduct by others without disability, and "then allowed Plaintiff to be ridiculed by teammates without consequence." (Am Compl ¶ 49.)  Plaintiffs failed, however, to describe any specific similar incident involving a non-disabled student, or any other fact that would provide context for considering the reasonableness of the individual

Defendants' actions. See Preston, 876 F. Supp. 2d at 244-45 (failure to set forth any supporting facts that would render conclusory allegations plausible, such as facts identifying similarly-situated students or describing the treatment of female complainants by the defendants in like circumstances, warranted dismissal of gender-based equal protection claim).

With respect to Defendant Straub, Plaintiffs allege that in November 2012:

> In response to unrelenting harassment and bullying by [fellow student] Defendant Michael Easton, Gregory Spring physically responded to Easton. Upon information and belief, Gregory Spring's conduct was a manifestation of his disability. Gregory Spring was immediately suspended and punished by Defendant [Assistant Principal] Straub for this incident. No manifestation hearing was provided or waived by Plaintiffs even though multiple students came forward to support Gregory's claim that said student engaged in acts of bullying toward him. Upon information and belief, Defendant Straub failed to discipline [Easton].

(Am Compl ¶ 42.)  No further detail is offered regarding Easton's conduct during the incident, and the reference to Gregory "physically respond[ing]" implies that Easton's conduct was verbal.  (Id.)  Absent more specific allegations, there is no factual basis for concluding that Gregory's punishment was not rationally related to his escalating conduct, but that he was instead punished more severely due to his disabilities.

3.    First Amendment Retaliation

Plaintiffs' third cause of action alleges that the School Defendants retaliated against Gregory and his mother, Keri Spring, for opposing bullying, harassment, and discrimination in violation of their First Amendment rights. (Am Compl ¶¶ 75-79.) "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused

15

him some injury." <u>Dorsett v. County of Nassau</u>, 732 F.3d 157, 160 (2d Cir. 2013). Retaliation may be found where it is shown that a defendant's conduct effectively chilled the exercise of his or her First Amendment rights. <u>Dorsett</u>, 732 F.3d at 160 (citing <u>Curley v. Vil. of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001)).   Chilled speech, however, is not an essential condition of a First Amendment retaliation claim, a violation may also be established where a defendant's actions caused the plaintiff some other concrete harm. <u>Dorsett</u>, 732 F.3d at 160.

Here, Plaintiffs again improperly rely on a group pleading and fail to specify what particular conduct by each Defendant was retaliatory. <u>Atuahene</u>, 10 F. App'x. at 34; <u>see</u> <u>Thomas</u>, 925 F. Supp. 2d at 363 (insufficient for a plaintiff to rely on a group pleading); <u>Bertuglia</u>, 839 F. Supp. 2d at  723 n. 4 (same); <u>see</u> <u>Elmer v. Fischer</u>, No. 09-CV-6505CJS, 2013 WL 6628258, *4 (W.D.N.Y. 2013) (plaintiff's failure to attribute alleged misconduct to any particular defendant warranted dismissal of claim).   Although there are numerous references to Plaintiff Keri Spring notifying and complaining to Defendants generally regarding Gregory's mistreatment, there are no factual allegations explaining what specific conduct by any individual Defendant constituted retaliation for which specific complaint. Although Plaintiffs allege that Keri Spring met with Defendant Straub "on no less than six (6) different occasions between January and June 2013 seeking action and intervention," (Am Compl ¶ 56), the only specific conduct alleged on Straub's part that has the potential to be construed as causing concrete harm occurred previously in November 2012, and therefore Straub's alleged conduct cannot be said to be in retaliation for complaints not yet made.   (Am Compl 42 (alleged failure to punish Defendant Easton), 56 (alleged facilitation of criminal prosecution of Gregory).)

16

Plaintiffs have therefore failed to state a claim of First Amendment retaliation with respect to any individual Defendant.

      4.    <u>Section 1983 Claims against the Defendant School District and School Board</u>

As noted above, absent an underlying constitutional violation by an individual Defendant, a <u>Monell</u> claim against the municipal defendants, the School District and School Board, cannot lie. <u>Rankel v. Town of Somers</u>, 999 F.Supp.2d 527, 550 (S.D.N.Y. 2014) (citing <u>Segal v. City of N.Y.</u>,  459 F.3d 207, 219 (2d Cir. 2006)); <u>see</u> <u>Chambers v. North Rockland Central Sch. Dist.</u>, 815 F. Supp. 2d 753, 763-64 (S.D.N.Y. 2011) (no need to address <u>Monell</u> claim where court concluded the individual defendants did not violate plaintiff's substantive due process rights); <u>Vassallo v. Lando</u>, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (no <u>Monell</u> claim can lie against a municipality absent an underlying constitutional violation committed against a plaintiff by the individual defendants).   Accordingly, the § 1983 claims are dismissed as against these Defendants as well.

      5.    <u>New York State Constitutional Claims</u>

Plaintiffs' fourth cause of action alleges a violation of Article I, Section 6 of the New York state constitution. (Am Compl ¶ 81-82.)  This provision provides, in addition to several criminal procedure safeguards, that "[n]o person shall be deprived of life, liberty or property without due process of law."  In the absence of a clear ruling that a different standard is to be applied, New York courts generally interpret the due-process guarantees of the New York Constitution and the United States Constitution as coextensive. <u>Oneida Indian Nation of N.Y. v. Madison Cty.</u>, 665 F.3d 408, 427 n. 13 (2d Cir. 2011); <u>see</u> <u>People v. Paris</u>, 229 A.D.2d 926, 927, 646 N.Y.S.2d 737 (N.Y.A.D. 4th

Dep't 1996), *lv denied*, 88 N.Y.2d 1070 (1996) (utilizing federal standard for state constitutional claim absent a convincing showing that a different standard should be applied); see generally People v. Kohl, 72 N.Y.2d 191, 197, 527 N.E.2d 1182 (1988) (discussing factors to be considered prior to applying a different standard under the state constitution). No basis for a broader state interpretation has been shown here, and Plaintiffs' allegations in support of this state claim are identical to those asserted under Plaintiff's first cause of action for substantive due process. (Am Compl ¶¶ 67-68, 81-82.) Dismissal is therefore warranted for the same reason.

Plaintiffs' fifth cause of action alleges, like their second cause of action, that the School Defendants failed to take action to protect Gregory from discrimination in violation of Article I, Section 11 of the New York state constitution, which precludes the denial of "the equal protection of the laws of this state or any subdivision thereof." "Because the Equal Protection Clauses of the federal and New York Constitutions are coextensive," this claim must be dismissed for the same reasons underlying dismissal of Plaintiffs' second cause of action. Town of Southold v. Town of East Hampton, 477 F.3d 38, 53 n. 3 (2d Cir.  2007); Bloomingburg Jewish Educ. Ctr., -- F. Supp. 2d --, 2015 WL 3604300, *15 (S.D.N.Y. 2015).

Moreover, although the New York Court of Appeals has recognized a private right of action for equal protection violations under the State Constitution, this damages remedy is only available where necessary to ensure the full realization of a plaintiff's constitutional rights.  See Wahad v. F.B.I., 994 F. Supp. 237, 239 (S.D.N.Y. 1998) (citing Brown v. State of New York, 89 N.Y.2d 172, 187-89, 674 N.E.2d 1129 (1996)). Thus, the recognition of a state constitutional violation claim is neither necessary nor

appropriate where a plaintiff can pursue remedies under 42 U.S.C. § 1983 or New York Executive or Civil Rights Law. See Biswas v. City of N.Y., 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013), *appeal dismissed*, 576 F. App'x 58 (2014); G.D.S. ex rel. Slade, 915 F. Supp. 2d at 280; see generally Brown, 89 N.Y.2d at 192. The fact that Plaintiffs failed to adequately state such claims does not undermine the fact that those avenues of redress were available.  The fourth and fifth causes of action are therefore also dismissed.

**B.    ADA and REHABILITATION ACT**

Plaintiffs' sixth and seventh causes of action allege the School Defendants violated Title II of the ADA and the Rehabilitation Act.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; Disabled in Action v. Bd. of Elections in City of N.Y., 752 F.3d 189, 196 (2d Cir. 2014). Similarly, Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' " individuals with a disability. McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)); (see Am Compl ¶ 9 (alleging the Defendant School District receives federal financial assistance).  Plaintiffs allege in these claims that:

> *Inter alia*, Defendants failed to take action to protect Gregory Spring from bullying, harassment and discrimination because of his disabilities as well as themselves engaging in discrimination because of his disabilities. Defendants also retaliated against Gregory Spring for opposing said bullying, harassment and discrimination.  Defendants also retaliated against Keri Spring for advocating for the disabled by alternately placating and reassuring her that something would be done and then deliberately and stubbornly refusing to do so, instead implicating her son and his

upbringing that was the cause [*sic*].  Such conduct ultimately resulted in the suicide of Gregory and the loss of the Plaintiffs' son and brother.

(Am Compl ¶ 93, 99.)    Accordingly, Plaintiffs are alleging separate claims of discrimination and retaliation under each statute.

      1.    <u>Discrimination based on Disability</u>

Generally, "[c]laims under Title II of the ADA and section 504 of the Rehabilitation Act are analyzed identically." <u>Preston v. Hilton Cent. School Dist.</u>, 876 F. Supp. 2d 235, 241 (W.D.N.Y. 2012) (citing <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 272 (2d Cir. 2003)). The prohibition against discrimination under these statutes includes discrimination in access to a free appropriate public education through special education and related services. <u>Preston</u>, 876 F. Supp. 2d at 241.   To state a *prima facie* cause of action under the relevant provisions of the ADA or Rehabilitation Act, a plaintiff must show " '(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.'" <u>Preston</u>, 876 F. Supp. 2d at 241 (quoting <u>Harris v. Mills</u>, 572 F.3d 66, 73-74 (2d Cir. 2009)). "Denial of the opportunity to participate in or benefit from defendants' services does not require that the student be physically prevented from access: rather, a plaintiff must establish harassment by students that is so severe, pervasive, and objectively offensive, and that so undermines and distracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." <u>Preston</u>, 876 F. Supp. 2d at 241 (internal quotation marks, ellipses, and brackets removed) (quoting <u>Davis v. Monroe County Bd.</u>

of Educ., 526 U.S. 629, 650–51, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)).

This Court agrees with the School Defendants that Plaintiffs failed to sufficiently plead that Gregory suffered from a qualifying disability within the meaning of these statutes. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1); see 29 U.S.C. § 705(20)(B). "Major life activities" are further defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Here, Plaintiffs alleged that Gregory was in fact disabled, and that those "disabilities included but were not limited to Tourette's Syndrome, ADHD, and Callosum Dysgenesis." (Am Compl ¶ 33.) No further details are alleged, and Plaintiff's argument that "it is not unreasonable to infer that such disabilities interfered with major life activities" is without merit. (Pls' Mem in Opp'n at 16, Docket No. 49); see Hedges v. Town of Madison, 456 F. App'x 22, 24 (2d Cir. 2012) (even under liberal pleading standards, a court is not required to infer the existence of a disability as defined by statute from a mere list of medical conditions); Tylicki v. St. Onge, 297 F. App'x 65, 66-67 (2d Cir.  2008) (finding failure to adequately allege a qualifying disability where complaint contained no allegations describing how plaintiff's mental condition limited a major life activity); Heckmann v. Town of Hempstead, No. CV 10-5455(SJF)(GRB), 2012 WL 1031503, *4 (E.D.N.Y. Feb. 24, 2012) (dismissal appropriate where a plaintiff fails to allege how an impairment limits a major life activity), *rep & rec adopted by* 2012

WL 1032776 (EDNY Mar. 27, 2012).  The brief references to Gregory exhibiting "disability related tics" fails to describe the impairment of a major life activity. (Am Compl ¶ 41, 56.)  Further, the fact that a plaintiff receives special education services does not necessarily mean that the plaintiff qualifies as an individual with a disability under the ADA or Rehabilitation Act.  B.C. v. Mount Vernon City School Dist., No. 11 CV 1411 (VB), 2014 WL 4468082, *7-8  (S.D.N.Y. Aug. 28, 2014) (noting that ADA and the Rehabilitation Act's definitions are more stringent than IDEA's definition of disability) (citing  Ellenberg v. New Mexico Military Inst., 572 F.3d 815, 820-22 (10th Cir. 2009)). Plaintiffs therefore failed to allege that Gregory was disabled within the meaning of these statutes, and these claims must be dismissed.

2.     Retaliation under the ADA and Rehabilitation Act

Plaintiffs also allege retaliation under these statutes.   The elements of a retaliation claim under either the ADA or Section 504 are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002), superseded by statute on other grounds by 42 U.S.C. § 12102(3)(A). (internal quotation marks and citation omitted); see Eskenazi-McGibney v. Connetquot Central Sch. Dist., -- F. Supp. 3d --, 2015 WL 500871, *10 (E.D.N.Y. 2015).

The Amended Complaint fails to sufficiently allege that any Plaintiff engaged in protected activity under the ADA or Rehabilitation Act.  Although there are numerous general allegations that Plaintiff Keri Spring complained of bullying and the lack of an

anti-bullying policy (Am Compl ¶¶ 41, 43, 45, 46), Plaintiffs do not allege that Keri complained that the bullying was on account of Gregory's purported disability. See Eskenazi-McGibney., 2015 WL 500871 at *11 (complaints of "bullying," without more, are insufficient to establish protected activity under the ADA or Section 504). Plaintiffs do allege that Keri Spring complained to Defendant Straub on six different occasions between January and June 2013 about "Defendant Easton and his behavior," which was previously alleged to include "mocking and mimicking [Gregory's] disability related tics." (Am Compl ¶ 56.) However, as concluded above, these complaints occurred after any specific alleged conduct that could be considered retaliatory. (Am Compl ¶¶ 49, 56; see Pls' Mem in Opp'n at 17, Docket No. 49 (arguing that Defendant's Straub's "decision to aid the Eastons in an effort to criminally prosecute Gregory" was retaliatory)); see Marecheau v. Equal Employment Practices Com'n, No. 13-CV-2440(VEC), 2014 WL 5026142, *8 (S.D.N.Y. Sept. 30, 2014) (allegations failed to raise a plausible inference of retaliation where protected activity took place subsequent to the purported retaliatory action).

Accordingly, both the discrimination and retaliation claims under the ADA and Section 504 must be dismissed. Further, because the School Defendants raised these arguments in their motion to dismiss the original complaint, (Sch Defs Mem of Law at 28-31, Docket No. 8-5), and Plaintiffs failed to remedy the deficiency in their Amended Complaint or provide any further detail in their opposition, these claims are dismissed with prejudice.[5]

---

[5] In light of the conclusion that these claims are subject to dismissal for failure to state a claim, this Court finds it unnecessary to address the extent to which the § 1983 and federal discrimination claims are sustainable against the individual Defendants in their personal capacities versus their official capacities.

## C.    REMAINING STATE LAW CLAIMS

Plaintiffs remaining causes of action arise under New York state and common law.  Having dismissed all of the federal claims, the issue of whether to exercise supplemental jurisdiction over these causes of action is a matter within this Court's discretion.  <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 304-5 (2d Cir. 2003). Pursuant to 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  However, a court may decline to exercise supplemental jurisdiction over a state law claim where, among other thing, "the claim a novel or complex issue of State law," or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  Notably, however, the exercise supplemental has been found to be an abuse of discretion "where the federal claims ha[ve] been dismissed at a relatively early stage and the remaining claims involve[] issues of state law that [are] unsettled." <u>Valencia</u>, 316 F.3d at 306.

Here, Plaintiffs' remaining contentions are that (1) all Defendants violated New York Civil Rights Law § 79-n (eighth cause of action); (2) Defendants are liable for the wrongful death of Gregory (ninth cause of action); (3) the School Defendants are liable for negligence and gross negligence (tenth and eleventh causes of action ); and (4) Defendant Diane Lowry is liable to Plaintiffs Keri, Eugene, and Julianne Spring for intention, reckless, and/or negligent infliction of emotional distress (twelfth cause of action).[6]

---

[6] In light of this Court's decision not to exercise supplemental jurisdiction over Plaintiffs' remaining state court claims, there is no need to resolve Plaintiffs' counsel's request for "leave to withdraw their claims of Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress as against Defendant Lowry, without prejudice, pending discovery." (Bosman Affirm ¶ 6, Docket No. 45-1.)

As the School Defendants note, New York Civil Rights Law § 79-n, which establishes a civil remedy for bias-related violence or intimidation,  is a relatively new law, having been passed by the New York state legislature on July 30, 2010, and becoming effective in August of that year.  It appears, however, that New York courts have not had the opportunity to consider this new law since its enactment.[7]  As such, there is little guidance for the parties' arguments whether this statute only provides a remedy where no other existent laws would provide relief. (See Sch Defs Mem of Law at 35-36; Sch Defs App'x to Mem, Docket No. 42-7 (Governor's approval message stating that "this new civil remedy typically would not be available where existing discrimination laws already provide protection, such as in employment or public housing decisions"); Pls' Mem in Opp'n at 18, Docket No. 49.)

The School Defendants further argue that Plaintiffs' state tort claims must be dismissed because Plaintiffs failed to comply with the New York state notice of claim requirements.  See generally N.Y. General Municipal Law §§ 50-e, 50-i; N.Y. Education Law § 3813.  These Defendants argue that Plaintiffs' notices[8] were untimely because they failed to allege the specific tortious conduct occurring within the 90-day period prior to their first notice of claim, see N.Y. General Municipal Law § 50-e (a notice of claim must state the time when, place where, and manner in which a claim arose and be served within 90 days of that accrual), or that occurred within one year and 90 days of the commencement of this action. See § 50-i(1) (action must be commenced within one

---

[7] In fact, it appears that the only one federal court has considered a claim under this law, and there the claim was summarily dismissed without comment.  O'Dell v. Jefferson County, N.Y., No. 7:13-CV-1148, 2014 WL 1393949, *4 (N.D.N.Y. Apr. 8, 2014).

[8] Plaintiffs filed a second notice of claim after Keri Spring was appointed administrator of Gregory Spring's estate, as required for a wrongful death action.  See N.Y. General Municipal Law § 50-e(1)(a) (a notice of claim must be served "within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent's estate").

year and 90 days of the event underlying the claim or two years after the death at issue in a wrongful death action); (Sch Defs Mem of Law at 36-37.)  Plaintiffs respond that, among other things, because Gregory was a minor at the time these causes of action arose, these deadlines were tolled. (Pls' Mem in Oppp'n at 22-23, Docket No. 49.)

Plaintiffs are correct that infancy tolls the one-year and 90-day statutory limitation period for commencing an action provided by § 50-e, as well as the time period within which an application to file a late notice of claim may be made.  See Kurz v. N.Y.C. Health & Hosps. Corp., 174 A.D.2d 671, 671-72, 571 N.Y.S.2d 533 (N.Y.A.D. 2d Dep't 1991) (citing N.Y. C.P.L.R. § 208); Grellet v. City of N.Y., 118 A.D.2d 141, 144, 504 N.Y.S.2d 671 (N.Y.A.D. 2d Dep't 1986).   However, "[t]he infancy of the petitioner, standing alone, does not compel the granting of an application for leave to serve a late notice of claim," but instead it is instead only one factor to be considered.  Bischert v. County of Westchester, 212 A.D.2d 529, 530, 622 N.Y.S.2d 308 (N.Y.A.D. 2d Dep't 1995).

To that end, although the Second Circuit has not definitively ruled on this issue, district courts in this circuit have held that they are without authority to grant a request to extend time to serve the notice of claim.  Jackson v. City of N.Y., 29 F. Supp. 3d 161, 181 (E.D.N.Y. 2014); Mosdos Chofetz Chaim, Inc. v. Vil. of Wesley Hills, 815 F. Supp. 2d 679, 709-10 (S.D.N.Y. 2011); Dingle v. City of N.Y., 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010); see Parise v. New York City Dept. of Sanitation, 306 F. App'x. 695, 697 n. 2 (2d Cir. 2009) (declining to determine whether a federal court has jurisdiction to correct or disregard a defective notice of claim).  This conclusion is based on the requirement in section 50-e that "[a]ll applications under this section shall be made to

the supreme court or to the county court . . ." N.Y. General Municipal Law § 50-e(7); Jackson, 29 F. Supp. 3d at 181; Mosdos Chofetz Chaim, Inc., 815 F. Supp. 2d at 709-10.   Accordingly, this Court finds it prudent to decline to exercise supplemental jurisdiction over the remaining[9] state law claims in this case, and therefore these causes of action will be dismissed without prejudice.

## D.   RULE 11 SANCTIONS

In their motions to dismiss, the School Defendants request that this Court impose sanctions on Plaintiffs for maintaining causes of action in the Amended Complaint against Defendants Zimmer, Quinlan, Kahm, Black, Farrell, Palmer, and Nuss, members of the Defendant School Board. (Sch Defs Mem of Law at 43-44; see also Sch Defs Mem of Law at 39-40, Docket No. 8-5 (raising the same argument in response to the original Complaint).)  They argue that Plaintiff's continued pursuit of these claims without any factual allegations regarding these Defendants was frivolous and therefore subject to sanctions under Rule 11 of the Federal Rules of Civil Procedure.  However, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).  Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 51 -52 (2d Cir. 2008), cert denied, 555 U.S. 1102 (2009) (failure to meet Rule 11 procedural requirements warranted denial of sanctions).  Defendants' request is therefore denied.

---

[9] Claims of "constitutional torts" in violation of the New York state constitution are also subject to the notice of claim requirement. Pratt v. Indian River Cent. School Dist., 803 F. Supp. 2d 135, 146 (N.D.N.Y. 2011) (citing 423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474, 490, 503 N.E.2d 63 (1986), cert denied, 481 U.S. 1008 (1987)).  As discussed above, however, this Court finds dismissal of the fourth and fifth causes of action appropriate because the state law constitutional claims are merely duplicative of the federal claims. Parise v. New York City Dept. of Sanitation, 306 F. App'x 695, 697 n. 2 (2d Cir. 2009) (resolution of potentially defective notice of claim unnecessary where dismissal would be required on the merits).

## III. CONCLUSION

This Court finds that dismissal of the first seven causes of action with prejudice is warranted, and the motions of the School Defendants and Defendant Lowry are granted to that extent.  Because this Court declines to exercise supplemental jurisdiction over the remaining state law claims, the remainder of the motions to dismiss are dismissed as moot.  In so concluding, it must be noted that this Court does not take lightly the tragic loss of a young life which prompted the initiation of this action, and the finding that dismissal is warranted should not be construed as minimizing the seriousness of the events alleged. The absence of more specific factual allegations, however, in addition to failing to meet the legal requirements necessary to state the particular claims asserted, simply precludes an understanding of the causal link Plaintiffs assert exists between the actions or inactions of the individual Defendants and Gregory Spring's suicide.  Instead, despite Plaintiffs' counsel having notice of these deficiencies prior to filing the Amended Complaint, the only specific facts asserted pertain to isolated events in April and November 2012, approximately seven months prior to Gregory's death.

## IV. ORDERS

IT HEREBY IS ORDERED that the motions to dismiss of Defendant Lowry (Docket No. 40) and the School Defendants (Docket No. 42) are GRANTED in part and DISMISSED AS MOOT in part, as stated above;

FURTHER, that the motions to dismiss of Defendants Roewe and Easton (Docket Nos. 60, 62) are dismissed as moot;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: September 30, 2015
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge