UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KERI SPRING; EUGENE SPRING; JULIANNE
SPRING; EUGENE SPRING and KERI
SPRING on behalf of GREGORY SPRING; and
KERI SPRING, as the duly appointed
administrator of the ESTATE OF GREGORY
SPRING,

                Plaintiffs,

    v.

ALLEGANY-LIMESTONE CENTRAL SCHOOL
DISTRICT, *et al.*,

                Defendants.

**DECISION AND ORDER**
14-CV-476S

## I.     INTRODUCTION

Plaintiffs commenced this action on June 17, 2014, asserting claims pursuant to

42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA");

the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act"); New York Civil

Rights Law § 79-n; New York Estate Powers & Trusts Law ("EPTL") § 5-4.1; and New

York State common law.  This Court granted a motion to dismiss Plaintiffs' Amended

Complaint on September 30, 2015.  Spring v. Allegany-Limestone Cent. Sch. Dist., 138

F. Supp. 3d 282 (W.D.N.Y. 2015) ("Spring I").  Plaintiffs then moved to vacate the

judgment and file a Second Amended Complaint, which this Court denied on November

4, 2015.  (Docket No. 74.)

Plaintiffs appealed that denial to the Second Circuit, which affirmed the dismissal

of Plaintiffs' equal protection claims, substantive due process claims, retaliation claims,

Monell liability claims, and state constitutional claims, but vacated this Court's denial of

leave to amend the complaint related to the ADA and Rehabilitation Act claims and the order declining to exercise supplemental jurisdiction over the state statutory and common-law claims.  See Spring v. Allegany-Limestone Cent. Sch. Dist., 655 F. App'x 25 (2d Cir. 2016) ("Spring II").  Consistent with that decision, Plaintiffs filed their Second Amended Complaint ("SAC") on August 31, 2016.  (Docket No. 80.)

Presently before this Court are motions from Defendants Allegany-Limestone Central School District, Jeff Black, Robert Decker, David Farrell, Karen Geelan, Eric Hemphill, Matthew Kahm, Christopher Kenyon, Jay King, Maggie Nuss, Kim Palmer, Phil Quinlan, Sue Schifley, Kevin Straub, the Board of Education of the Allegany-Limestone Central School District, John Wolfgang, Joe Zimmer, and Diane Lowry[1] (together, the "School Defendants"), Michael Easton, and Jacob Roewe, seeking dismissal of the SAC, as well as a Cross-Motion from Plaintiffs seeking leave to file a Proposed Third Amended Complaint ("TAC").  For the reasons that follow, Plaintiffs' Cross-Motion to file the TAC is granted in part.  The motions of the School Defendants and Lowry are granted in part and denied in part.  The motions of Easton and Roewe are denied.

## II.    PLAINTIFFS' MOTION TO AMEND

This Court first addresses Plaintiffs' Cross-Motion to Amend their Complaint.  The Federal Rules of Civil Procedure direct that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has held that "[t]his permissive standard is consistent with [its] strong preference for resolving

---

[1] Defendant Diane Lowry is separately represented and has separately moved for dismissal of the claims against her.  (Docket No. 85.)  Nonetheless, to the extent that Plaintiffs allege claims against the "School District and its Defendant employees and agents," the Court will construe the claim as being asserted against both the School Defendants and Lowry.  Defendant Lowry's motion also incorporates by reference the arguments of her codefendants.

disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted). This liberality is tempered where a judgment has been entered, but that is not the case here. Therefore, although Plaintiffs have been given two previous opportunities to amend their pleadings—once as of right, and once by order of the Second Circuit—this Court finds that justice dictates a third opportunity. The motion to amend is granted, and this Court will consider the allegations of the TAC for purposes of the pending motions to dismiss.

### III.    BACKGROUND

This action arises from the tragic suicide of high school student Gregory Spring on June 17, 2013. As described in the TAC, Gregory[2] was a special education student who suffered from disabilities including Tourette's Syndrome, ADHD, and Callosum Dysgensis. (TAC at ¶¶ 32-33.) "Sufferers of DCC (Dysgenesis of the Corpus Collosum) often experience challenges with social interactions due to difficulty imagining potential consequences of behavior, being insensitive to the thoughts and feelings of others, and misunderstanding social cues (for example, being vulnerable to suggestion, gullible, and not recognizing emotions communicated by tone of voice)." (TAC at ¶ 33 (citing an "April 7, 2011 Psychoeducational Evaluation of the Defendant Allegany-Limestone Central School").) Plaintiffs allege that these disabilities impacted Gregory's ability to speak, learn, read, concentrate, think, and communicate. Gregory's disabilities also presented in the form of motor and vocal tics, including "regular and frequent swallowing sounds, outbursts, involuntary knee slapping and eye blinking tics and compulsive cracking of his neck and wrists; repetitive utterance of foul language including the 'F' word and repetitive

---

[2] For ease of reference, the Spring family members are referred to by their given names.

questioning." (Id.)

Plaintiffs allege that, during middle school and high school, Gregory "was subjected to numerous acts of fear and intimidation including . . . teasing, taunting, bullying, name calling, violence, offensive touching, hitting, interference with relationships, and public and private humiliation—conduct motivated in whole or part by his disabilities." (TAC at ¶ 41.) The name calling included "retard" and "dummy", and his classmates also "mocked and mimicked his disability related tics . . . on a regular, daily, or near daily basis." (Id.)

Plaintiffs allege one incident in April 2012 when Gregory was disciplined and removed from the school's baseball team as a result of "horseplay" by Hamphill and Kenyon, who were both teachers and coaches. (TAC at ¶ 49.) In another incident, on November 8, 2012:

> In response to unrelenting harassment and bullying by [fellow student] Defendant Michael Easton, Gregory Spring physically responded to Easton. Upon information and belief, Gregory Spring's conduct was a manifestation of his disability. Gregory Spring was immediately suspended and punished by Defendant [Assistant Principal] Straub for this incident. No manifestation hearing was provided or waived by Plaintiffs even though multiple students came forward to support Gregory's claim that said student engaged in acts of bullying toward him. Upon information and belief, Defendant Straub failed to discipline [Easton].

(TAC at ¶¶ 21, 27, 42.) Plaintiffs allege that, following this incident, Easton, "with the aid, encouragement, sanction, and facilitation of the School District Defendants, on or about November, 2012 initiated criminal prosecution against Gregory Spring. Upon information and belief, Straub met with Easton and his parents, encouraged and facilitated the contact of law enforcement authorities to bring charges against Gregory Spring." (TAC at ¶ 56.)

Plaintiffs allege that, although Gregory's mother Keri "continuously and on

occasions too numerous to mention sought the assistance of school officials," the bullying conduct was "minimized, dismissed and ignored by the school district's staff and officials, including the named Defendants." (TAC at ¶ 56.) For example, after the November 2012 incident, Easton and fellow student Roewe escalated their harassment of Gregory, following him around school and finding him at his place of work, and "calling him 'retard' and other disparaging names, mocking and mimicking his disability related tics, threatening to 'kill' and 'beat' him." (Id.) Plaintiffs allege that Keri met with Straub on "no less than six . . . different occasions between January and June 2013" to complain regarding this escalation, but no action was taken. (Id.) Throughout these meetings, Plaintiffs allege that Keri and Gregory both made clear that the bullying conduct was due to Gregory's disabilities and referenced the mocking and mimicking of his disability-related tics. (Id.) At one such meeting in February or March 2013, Keri allegedly advised Straub that she was concerned that her son might harm himself and showed him copies of news articles dealing with bullying, including an article titled "Tormented to Death." (Id.) At another meeting in March or April 2013, Gregory and Keri went together to see Straub and requested that the school intervene in the bullying. Straub allegedly refused, stating that Gregory was "just trying to get [Easton and Roewe] in trouble." (Id.) This allegedly resulted in additional escalation, including "taunts by Defendant Roewe about how he and Easton were free to do anything against Gregory." (Id.) Finally, at a meeting in April or May 2013, Keri allegedly brought a book about bullying called "Words Matter" to Straub and stated again that she was concerned that her son might harm himself. (Id.) Keri also allegedly told Straub that the school's failure to act was due to Gregory's disabilities. (Id.) After Gregory's death, Straub allegedly admitted that he failed to act when he should

have, and expressed regret for his and the School's lack of response. (Id.)

Plaintiffs allege that Keri also informed Wolfgang, Geelan, Straub, Kenyon, Schifley, and King of her concerns. (TAC at ¶ 45.) In the fall of 2012, Keri contacted Geelan, Straub, Schifley, and King in person, by phone, and by email to inform them of the bullying and harassment and to discuss the absence of an anti-bullying policy. (Id.) Board Members King, and Schifley allegedly told Keri that her concerns regarding the bullying would be brought to the attention to the full Board in Executive Session. (TAC at ¶ 47.) However, Plaintiffs allege that the Board did not take any protective or corrective action, including the adoption of an anti-bullying policy. (TAC at ¶ 46.) Plaintiff allege that this failure to act "was the product of discriminatory animus of School officials because of Gregory Spring's disabilities." (TAC at ¶ 47.) Plaintiffs also allege that multiple "faculty members (Ms. Missel, Mr. Gilbert, Ms. Connie Spring, Mr. Austin, Defendants Lowry, Kenyon, Hemphill, etc.) spoke negatively about Gregory Spring calling him names such as 'misfit', 'troublemaker', 'baby', etc. in the presence of faculty, staff and students." (TAC at ¶ 47.)

Plaintiffs allege that "[d]ue to Defendants' acts and omissions, including negligence, gross negligence, recklessness and/or deliberate indifference to disabilities, bullying, and discriminatory conduct against Gregory Spring, they caused him severe emotional distress, humiliation, embarrassment, and self-loathing causing and/or contributing to his suicide on June 17, 2013." (TAC at ¶ 54.) Two days after Gregory's suicide, on June 19, 2013, Lowry, a teacher's assistant, "authored and spoke statements and posted comments via internet and on-line pertaining to Gregory Spring and his death, falsely accusing him of misconduct and otherwise disparaging him and inflicting severe

emotional distress upon the Plaintiffs herein." (TAC at ¶¶ 22, 57.) The specific statements or contents of Lowry's comments are not described in the TAC. Plaintiffs allege, on information and belief, that Easton and Roewe also authored, made statements, and posted comments via internet and on-line pertaining to Gregory's death, stating: "HAHAHAHAHAHA HE DIED!!!!!! I HOPE HE IS IN HELLLLLLLLLL." (TAC at ¶ 57.)

## IV.  DISCUSSION

Defendants move under Rule 12(b)(6), which allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (assumption of truth applies only to factual allegations and is inapplicable to legal conclusions).

In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. Although a plaintiff is not required to provide "specific facts", the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" in order to survive a motion to dismiss. See Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). "As the Court held in Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555).

## A.     The Mandate Rule

The Second Circuit's summary order affirmed dismissal of certain claims while vacating the dismissal of others.  Both parties make arguments regarding the claims for which the Second Circuit affirmed dismissal.  Plaintiffs argue that the dismissed claims should be reinstated based on the new allegations in the TAC; Defendants argue that the claims should be struck from the operative complaint pursuant to the mandate rule.

The summary order essentially contained six rulings.  First, the order vacated this Court's denial of leave to amend Plaintiffs' claims in order to file a Second Amended Complaint.  Spring II, 655 F. App'x at 27-28.  Second, it vacated the judgment dismissing Plaintiffs' ADA and Rehabilitation Act claims.  Id.  Third, it affirmed dismissal of the substantive due process claims, though on the alternate ground that Plaintiffs' had failed to allege deliberate indifference because "there are no facts alleged from which [the Appellate Court] can plausibly infer that any individual defendant had actual knowledge of yet disregarded an obvious or excessive risk of Gregory's suicide."  Id. at 28.  Fourth, it affirmed dismissal of the equal protection claims, finding that there were no allegations of disparate treatment.  Id.  And, citing Gant ex rel. Gant v. Wallingford Board of Education, 195 F.3d 134, 141 (2d Cir. 1999), it made a separate finding with respect to the equal protection claim that "[t]he factual allegations are insufficient to establish deliberate indifference of the kind we have required in the context of racial or sexual harassment in schools."  Spring II, 655 F. App'x at 28-29.  Fifth, the Second Circuit affirmed dismissal of "the retaliation claims, Monell liability claims, and state constitutional

8

claims." Id. Finally, it "vacate[d] the order and judgment of the District Court for consideration of whether supplemental jurisdiction over [the state statutory and common-law claims] should be exercised in light of our remand of the ADA and Rehabilitation Act claims." Id. at 29.

Under the mandate rule, "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993); United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." (citation and internal quotation marks omitted)). "In other words, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." Id. (internal citation and quotation marks omitted). Because the Second Circuit expressly affirmed dismissal of the substantive due process, equal protection, and New York State Constitution claims, there can be no doubt that their reinstatement is barred by the mandate rule.

The mandate is less clear with respect to the ADA and Rehabilitation Act claims. In Spring I, those claims were dismissed on the basis that Plaintiffs had failed to sufficiently allege that Gregory suffered from a disability. 138 F. Supp. 3d at 298-99. In vacating the denial of leave to amend and dismissal of the claims, the Second Circuit found that proposed amendments in the SAC "would have sufficed to meet the requirements of a qualifying disability" under the ADA and Rehabilitation Act. Spring II, 655 F. App'x at 27-28. It made no findings as to any other element of the ADA and Rehabilitation Act claims, including deliberate indifference.

9

However, in affirming dismissal of Plaintiffs' substantive due process claim, it held that Plaintiffs had not sufficiently alleged deliberate indifference because "there are no facts alleged from which we can plausibly infer that any individual defendant had actual knowledge of yet disregarded an obvious or excessive risk of Gregory's suicide." Id. at 28. It further held, in affirming dismissal of the equal protection claim, that "[t]he factual allegations are insufficient to establish deliberate indifference of the kind we have required in the context of racial or sexual harassment in schools." Id. at 28-29 (citing Gant, 195 F.3d at 141). Defendants now argue that, because deliberate indifference is also a necessary element of Plaintiffs' ADA and Rehabilitation Act claims, and because the Second Circuit has already held that Plaintiffs failed to plead deliberate indifference as to their other federal claims, this Court must dismiss the ADA and Rehabilitation Act claims under the mandate rule.

In order to determine whether the issue of deliberate indifference in the ADA and Rehabilitation Act claims remains open for consideration, this Court must "look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 270 (2d Cir. 2012) (quoting Ben Zvi, 242 F.3d at 95). "In following a mandate, the lower court must carry out its duty to give the mandate 'full effect.'" In re Coudert Bros. LLP, 809 F.3d 94, 98 (2d Cir. 2015) (quoting Ginett v. Comput. Task Grp., Inc., 11 F.3d 359, 360-61 (2d Cir. 1993)); see United States v. E.I. du Pont de Nemours & Co., 366 U.S. 316, 325, 81 S. Ct. 1243, 6 L. Ed. 2d 318 (1961) (mandate must be "scrupulously and fully carried out"). "The lower court 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal;

or intermeddle with it, further than to settle so much as has been remanded.'" Id. (quoting

In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S. Ct. 291, 293, 40 L. Ed. 414

(1895)). Based on the "spirit of the mandate," this Court finds that the ADA and

Rehabilitation Act discrimination claims were not foreclosed by the summary order. The

Second Circuit had the opportunity to consider and dismiss the claims based on the failure

to allege deliberate indifference, but did not do so. See Sompo Japan Ins. Co. of Am. v.

Norfolk S. Ry. Co., 762 F.3d 165, 175-76 (2d Cir. 2014) (district court did not violate

mandate rule in "addressing on remand an issue that was not decided by this Court in the

original appeal"); New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352

F.3d 599, 606 (2d Cir. 2003) ("Put simply, the law of the case does not extend to issues

an appellate court did not address." (internal quotation omitted)). Further, as discussed

below, this Court finds that the additional allegations set forth in the TAC have remedied

any prior deficiencies. Accordingly, this Court finds that it is not precluded from

considering the discrimination claims under the mandate rule.

The mandate is also less clear with respect to the retaliation claims. Plaintiffs

brought retaliation claims under the First Amendment, as well as ADA and Rehabilitation

Act. The Second Circuit affirmed dismissal of "retaliation" claims "for substantially the

reasons stated" in Spring I, without identifying whether the affirmance applied to the First

Amendment retaliation claims, ADA and Rehabilitation Act retaliation claims, or all claims.

Spring II, 655 F. App'x at 29. The reason given for dismissal of the retaliation claims in

Spring I was separate and unique from the reason for dismissal of the ADA and

Rehabilitation Act claims, and that reasoning was not discussed or addressed in the

summary order. See Spring I, 138 F. Supp. 3d at 299-300 (dismissing ADA and

Rehabilitation Act retaliation claims because Plaintiffs failed to allege complaints prior to a retaliatory act).  But, unlike deliberate indifference, retaliation is not simply an element of a claim, but is its own cause of action.  Because there is no basis from which to determine whether the Second Circuit intended to affirm dismissal of all retaliation claims or only a subset, this Court will consider all retaliation claims dismissed so as to "scrupulously and fully carr[y] out" the higher court's mandate.  See E.I. du Pont de Nemours & Co., 366 U.S. at 325, 81 S. Ct. 1243, 6 L. Ed. 2d 318.

Accordingly, the remaining causes of action are discrimination claims under the ADA and Rehabilitation Act, and the New York State statutory and common law claims.

**B.      ADA and Rehabilitation Act**

Having determined that Spring II did not foreclose this Court's consideration of the ADA and Rehabilitation Act claims, and having granted Plaintiffs' motion to amend its complaint, this Court now considers Defendants' arguments in light of the additional allegations set forth in the TAC.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; Disabled in Action v. Bd. of Elections in City of N.Y., 752 F.3d 189, 196 (2d Cir. 2014).  Similarly, Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified'" individuals with a disability.  McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)); (see TAC ¶ 9 (alleging the Defendant School District receives federal financial assistance).  Claims under these statutes are generally

analyzed identically.   Preston v. Hilton Cent. School Dist., 876 F. Supp. 2d 235, 241 (W.D.N.Y. 2012) (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

To state a *prima facie* cause of action under the relevant provisions of the ADA or Rehabilitation Act, Plaintiffs must show "'(1) that [Gregory] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [Gregory] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.'"   Preston, 876 F. Supp. 2d at 241 (quoting Harris v. Mills, 572 F.3d 66, 73-74 (2d Cir. 2009)).   The Second Circuit has held that the allegations satisfy the first element, and there is no argument as to the second element's applicability here. Accordingly, this Court turns to the third element.

The School Defendants argue that Plaintiffs cannot satisfy the third element because they did not sufficiently allege that the harassment directed at Gregory was "by reason of [his] disability."   Id.   However, the TAC contains numerous allegations that are consistent with disability-related harassment, including the general allegations that Gregory was subjected to "acts of fear and intimidation including, but not limited to, teasing, taunting, bullying, name calling, violence, offensive touching, hitting, interference with relationships, and public and private humiliation—conduct motivated in whole or part by his disabilities."   (TAC at ¶ 41.)  It goes on to specify that that the name calling included "retard" and "dummy", and that his classmates "mocked and mimicked his disability related tics . . . on a regular, daily, or near daily basis."   (Id.; see also TAC at ¶ 56.)  Those "disability related tics" are alleged to have included vocal spasms and motor contractions, including "regular and frequent swallowing sounds, outbursts, involuntary knee slapping

and eye blinking tics and compulsive cracking of his neck and wrists; repetitive utterance of foul language including the 'F' word and repetitive questioning." (TAC at ¶ 33.)

Granting Plaintiffs all reasonable inferences based on these allegations, the TAC alleges that Easton and Roewe, as well as other classmates, mimicked Gregory's vocal spasms and motor contractions, which are the outward signs of his disability, and taunted him with mocking comments and name calling. (See TAC at ¶ 33, 41, 56.) Mimicry of a disability, together with mocking comments, have previously been held to raise an issue of fact as to whether harassment was related to disability in an ADA hostile-work-environment claim. See Lewis v. Blackman Plumbing Supply L.L.C., 51 F. Supp. 3d 289, 312 (S.D.N.Y. 2014) (denying summary judgment where defendant mimicked disabled plaintiff's gait and made mocking comments). Similarly, "insults which specifically referenced the perceived nature of [a plaintiff's] disability" have been found to support a disability discrimination claim. Preston, 876 F. Supp. 2d at 242 (finding ADA and Rehabilitation Act claim sufficiently pled where disabled plaintiff was called "fucking retard" and "autistic piece of shit"). Moreover, as other courts have observed:

> Studies have shown that students with a disability, whether it is visible or non-visible, are subject to increased bullying that is often directed at the disability. These students are also at more risk for bullying directed at factors other than their disability. Harassing conduct may take many forms, including verbal acts and name-calling, as well as nonverbal behavior, such as graphic written statements, or conduct that is physically threatening, harmful, or humiliating.

T.K. v. New York City Dep't of Educ., 779 F. Supp. 2d 289, 303 (E.D.N.Y. 2011) (internal citations omitted); see also Preston, 876 F. Supp. 2d at 242; cf. Eskenazi-McGibney v. Connetquot Cent. Sch. Dist., 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015) (noting that, despite the increased risk of discrimination for disabled students, the ADA and

Rehabilitation Act are not "generalized anti-bullying statutes"). Accordingly, this Court finds that Plaintiffs have sufficiently pled that the alleged harassment was not merely generalized bullying, but was instead related to the perceived nature of Gregory's disability.

Defendants further contend that Plaintiffs have failed to sufficiently allege discrimination by the School Defendants, which can arise either through deliberate indifference or direct action. To establish deliberate indifference with respect to the ADA and Rehabilitation Act, "a plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur. It is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken 'maliciously or sadistically for the very purpose of causing harm.'" Gant, 195 F.3d at 141 (quoting Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994) (internal quotation marks omitted)). "Instead, deliberate indifference can be found when the defendant's response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" Id. (quoting Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648, 119 S. Ct. 1661, 1674, 143 L. Ed. 2d 839 (1999)).

The Second Circuit has held that this standard is not met where there are no allegations that school employees were aware of harassment arising from a student's special status. See id. (no deliberate indifference where no evidence was presented that teacher "knew of any racial name-calling other than [a single] incident"). That is not the case here. Plaintiffs allege that Keri met with school officials "continuously and on occasions too numerous to mention," but that "the school district's staff and officials,

including the named Defendants" "minimized, dismissed and ignored" her complaints. (TAC at ¶ 41.)  Plaintiffs allege at least six meetings between Keri and Straub between January and June 2013 alone.  (TAC at ¶ 56.)  In these meetings, Keri allegedly sought the school's intervention on behalf of her son, made clear that the bullying conduct was due to Gregory's disabilities by referencing the mimicry of his disability-related tics, and told Straub that she believed the school's failure to act was due to Gregory's disabilities. (Id.)  Plaintiffs further allege that Keri spoke specifically of her fear that Gregory might harm himself.  (Id.)  However, despite the repeated requests that the school act to stop the bullying, Plaintiffs allege that no "protective or remedial action" was taken by any of the School District Defendants.  (Id.)  Indeed, in refusing to take action, Straub allegedly stated that Gregory was "just trying to get [Easton and Roewe] in trouble."  (Id.)

Similar allegations to these have been held to sufficiently state a claim that school officials "acted with deliberate indifference to the harassment of [a disabled student] by his peers because of his disability, and that the defendants' alleged conduct had the effect of denying [him] access to educational opportunities."  Preston, 876 F. Supp. 2d at 242 (denying motion to dismiss ADA and Rehabilitation Act claims where plaintiffs alleged that school officials "failed to act, acquiesced in the harassment of [disabled plaintiff] and imposed no discipline on his harassers" despite numerous notifications).  As set forth in Gant, avoiding suit for deliberate indifference requires first, that a defendant was aware of the harassment, and second, that the defendant respond to known peer harassment in a manner that is not "clearly unreasonable."  195 F.3d at 143.  Straub is unable to meet these requirements, as he took no action in response to Keri's numerous complaints. Further, Straub's alleged statement that Gregory was "just trying to get [his harassers] in

trouble" (TAC at ¶ 56) may also be construed as an unreasonable response to the report of disability-related bullying. See Gant, 195 F.3d at 143 (noting, in dicta, that a teacher's response to a student complaining of racial harassment that "[W]e don't tell on other students" might allow "a jury to conclude that the statement demonstrated deliberate indifference to racial name-calling").

However, Plaintiffs allegations as to the other individual School Defendants do not rise to the level of deliberate indifference. With respect to the majority of the School Defendants, Plaintiffs make no allegation that they were aware of the bullying, or at least aware that it was related to Gregory's disability. Plaintiffs allege that Keri contacted Wolfgang, Geelan, Straub, Kenyon, Schifley, and King to "alert[ ] them to the ongoing bullying and harassment of her son and to address the lack of any anti-bullying policy in the district." (TAC at ¶ 45.) As to the other School Board Members—Zimmer, Quinlan, Kahm, Black, Farrell, Palmer, and Nuss—they are only alleged to have known about the harassment because Board Members King and Shiffley allegedly told Keri that "her concerns would be discussed by the Board and brought to the attention to the full Board in Executive Session." (TAC at ¶ 46.) However, again, there is nothing linking Keri's report to Gregory's disability. Accordingly, the claims must be dismissed as to these Defendants. See Eskenazi-McGibney, 84 F. Supp. 3d at 233 (no viable claim "under the ADA and [Rehabilitation Act] absent some factual allegation linking the disability and the bullying"); Doe v. Torrington Bd. of Educ., 179 F. Supp. 3d 179, 196 (D. Conn. 2016). Plaintiffs also allege that multiple faculty members, including Lowry, Kenyon, and Hemphill, "spoke negatively about Gregory Spring calling him names such as 'misfit', 'troublemaker', 'baby', etc. in the presence of faculty, staff and students." (TAC at ¶ 47.)

However, these comments did not clearly implicate Gregory's disability. See Cain v. Mandl Coll. of Allied Health, No. 14-CV-1729 ER, 2015 WL 3457143, at *5 (S.D.N.Y. May 29, 2015) (finding stray remarks of "kook" and "coo coo" did not "clearly implicate [plaintiff's] disability").

Having determined that Plaintiffs fail to state a claim under the ADA and Rehabilitation Act as to all individual Defendants except Straub, this Court turns to the School Defendants' arguments that the claims against individual defendants must be dismissed because they are not permitted under the ADA or Rehabilitation Act. Plaintiffs do not oppose this portion of the School Defendants' motion to dismiss. "Individual defendants may not be held personally liable for alleged violations of the ADA, or the Rehabilitation Act." Sutherland v. New York State Dep't of Law, No. 96 CIV. 6935 (JFK), 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) (internal citations omitted), aff'd, 216 F.3d 1073 (2d Cir. 2000); see also Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). However, the Second Circuit has held that ADA and Rehabilitation Act suits "for prospective injunctive relief may, under the doctrine established by Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), proceed against individual officers in their *official* capacity." Harris, 572 F.3d at 72 (emphasis added) (citing Henrietta D., 331 F.3d at 289). "Insofar as the amended complaint seeks prospective injunctive relief, then, it may be asserted against [Straub] in [his] official capacit[y]." See id.

Accordingly, the motion is granted as to claims against Straub in his individual capacity and any claims for monetary damages, and is otherwise denied.

## C. State Law Claims

Plaintiffs' remaining causes of action arise under New York statutory and common law: (1) New York Civil Rights Law § 79-n claim against all Defendants (eighth cause of action); (2) wrongful death claims under EPTL § 5-4.1 against all Defendants (ninth cause of action); (3) negligence and gross negligence claims against the School Defendants (tenth and eleventh causes of action); and (4) intentional, reckless, and/or negligent infliction of emotional distress claim against Lowry (twelfth cause of action).

### 1. New York Civil Rights Law § 79-n

New York Civil Rights Law § 79-n creates a civil cause of action for "[a]ny person who intentionally selects a person or property for harm or . . . causes physical injury or death to another" because of, *inter alia*, a disability. N.Y. Civ. Rights L. § 79-n(2). In Spring I, this Court noted that "New York Civil Rights Law § 79-n, which establishes a civil remedy for bias-related violence or intimidation, is a relatively new law" and that "there is little guidance" as to its applicability because New York courts have not had the opportunity to consider it. 138 F. Supp. 3d at 300. In the intervening two years, several courts have considered the statute, though none have interpreted its applicability in the school bullying context or considered "the extent of 'harm' required to state a cause of action." See Karam v. Cty. of Rensselaer, New York, No. 113CV01018MADDJS, 2016 WL 51252, at *18 (N.D.N.Y. Jan. 4, 2016) "Without interpretation from other courts regarding this statute, the legislative history provides a helpful understanding of its applicability." Id. (citing Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143-44 (2d Cir. 2002) (noting that courts may look at legislative history to interpret ambiguous text of a statute)).

The legislative history of § 79-n states that "this new remedy applies only to 'bias-related violence or intimidation'" and it is not "available where existing discrimination laws already provide protection, such as in employment or public housing decisions." Assemb. 223-529, Reg. Sess. (N.Y. 2010). Accordingly, this Court finds that the claim must be dismissed as to the School Defendants, against whom Plaintiffs may seek other remedies, including through the ADA and Rehabilitation Act. Further, the School Defendants were not directly responsible for Gregory's harassment, which at least one other court has found to be a proper basis for dismissal of a § 79-n claim. See Lopez v. City of New York, 186 F. Supp. 3d 304, 317 (S.D.N.Y. 2016) (dismissing claim where plaintiff did not allege that "[d]efendants themselves engaged in acts of violence or intimidation directed at her"). The School Defendants' motions to dismiss the § 79-n claims against them are granted.

However, Plaintiffs allege that Easton and Roewe each intimidated and made threats of violence against Gregory, including by "threatening to 'kill' and 'beat' him." (TAC at ¶ 56.) As set forth above, this Court has found that the TAC sufficiently alleges that the threats and intimidation were related to and because of Gregory's disability. Moreover, as Gregory's fellow students, Easton and Roewe are not liable under the ADA and Rehabilitation Act, and therefore a claim under § 79-n may be Plaintiffs' only remedy. Accordingly, Easton and Roewe's motions to dismiss the § 79-n claims against them are denied.

2. Wrongful Death and Negligence Claims

In Spring I, this Court dismissed Plaintiffs' state claims against the School Defendants without prejudice, on the grounds that Plaintiffs failed to comply with the New

York state notice of claim requirements. 138 F. Supp. 3d at 300-01. Plaintiffs provide no basis for this Court to change its determination on the issue. The School Defendants and Lowry's motions to dismiss these claims is therefore granted.

Easton and Roewe argue only that Plaintiffs' allegations are conclusory and that Gregory's suicide is an intervening and superseding cause of his death. This Court has already found that Plaintiffs' allegations are sufficient to satisfy the low pleading bar of a 12(b)(6) action. And, as a matter of New York law, suicide is not necessarily a superseding cause in a tort action. Sullivan v. Welsh, 132 A.D.2d 945, 518 N.Y.S.2d 274, 275 (4th Dep't 1987). Accordingly, Easton and Roewe's motions are denied.

### 3. Negligent and Intentional Infliction of Emotional Distress

Plaintiffs' final cause of action is "Intentional and/or Reckless and/or Negligent Infliction of Severe Emotional Distress" against Lowry.[3] (TAC ¶¶ 128-32.) Negligent infliction of emotional distress has been recognized in New York only where a plaintiff can establish one of the following: he suffered some physical trauma or was caused to fear for his physical safety, see Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996); he was within the so-called "zone of danger" when an immediate family member was killed or injured, see Trombetta v. Conkling, 82 N.Y.2d 549, 605 N.Y.S.2d 678, 626 N.E.2d 653 (N.Y. 1993); he was wrongly notified of the death of a near relative, see Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (N.Y. 1975); or the mortal remains of a deceased family member were improperly handled, see Lando v. State, 39 N.Y.2d 803, 385 N.Y.S.2d 759, 351 N.E.2d 426 (N.Y. 1976). None of those facts are applicable here. Therefore, because the New York Court of Appeals has cautioned against extending this

---

[3] Plaintiffs made clear in their cross-motion that this claim is made only against Lowry. (Docket No. 92-4 at 17.)

21

rule beyond these limited categories of cases, see <u>Tebbutt v. Virostek</u>, 65 N.Y.2d 931, 933, 493 N.Y.S.2d 1010, 1011-12, 483 N.E.2d 1142 (N.Y. 1985), a claim for negligent infliction of emotional distress does not lie. See <u>Nevin v. Citibank, N.A.</u>, 107 F. Supp. 2d 333, 346 (S.D.N.Y. 2000) (noting that "the parameters of this tort are extremely narrow").

To sustain a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996) (citing <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y. 1993)). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Campoverde v. Sony Pictures Entm't</u>, No. 01 Civ. 7775, 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002) (quoting <u>Murphy v. Am. Home Prods. Corp.</u>, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y. 1983)).

Plaintiffs allege that Lowry, a teacher's assistant, together with several other faculty and staff members, spoke negatively about Gregory and called him names such as "misfit", "troublemaker," and "baby" in the presence of faculty, staff, and students. (TAC at ¶ 47.) They also allege that, two days after Gregory's suicide, Lowry "authored and spoke statements and posted comments via internet and on-line pertaining to Gregory Spring and his death, falsely accusing him of misconduct and otherwise disparaging him and inflicting severe emotional distress upon the Plaintiffs herein." (TAC

at ¶ 57.)

Although these allegations are somewhat sparse, in light of the relaxed standard applicable at the motion-to-dismiss stage, they are sufficient for now to conclude that Plaintiffs have plausibly pled the necessary elements of intentional infliction of emotional distress. See Boykin, 521 F.3d at 214 (a plaintiff is not required to provide "specific facts" at 12(b)(6) stage). False and disparaging statements regarding a student in the immediate aftermath of a suicide "go beyond all possible bounds of decency," Campoverde, 2002 WL 31163804 at *11, and it can be reasonably inferred that such actions would result in severe emotional distress to Plaintiffs as Gregory's grieving family members. Accordingly, Lowry's motion to dismiss is denied.

## D. Punitive Damages

Defendants argue that punitive damages are not permitted in this case. This Court agrees that punitive damage claims may not be made against municipalities,[4] nor are they available under the ADA and Rehabilitation Act. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981) ("In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials."); Barnes v. Gorman, 536 U.S. 181, 189, 122 S. Ct. 2097, 2103, 153 L. Ed. 2d 230 (2002) (punitive damages may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act). However, it is not persuaded by Lowry, Easton, and Roewe's arguments that punitive damage claims must be denied as to the state claims because

---

[4] This Court considers both the Allegany-Limestone Central School District and the Board of Education of the Allegany-Limestone Central School District to be municipalities. See Benacquista v. Spratt, 217 F. Supp. 3d 588, 599 (N.D.N.Y. 2016) (noting that New York school district and associated school board are "municipal entities").

the allegations do not show conduct that is "so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others." <u>Rinaldo v. Mashayekhi</u>, 185 A.D.2d 435, 585 N.Y.S.2d 615 (3d Dep't 1992) (citations omitted). This Court finds that, at this early stage of the case, the allegations satisfy the requirement for a "high degree of moral culpability" and "a conscious disregard of the rights of others." <u>Marcoux v. Farm Serv. & Supplies, Inc.</u>, 283 F. Supp. 2d 901, 908 (S.D.N.Y. 2003) (collecting cases). Accordingly, with respect to the remaining state claims against individual defendants, the motion is denied.

## V. CONCLUSION

Plaintiffs' motion to amend is granted, but they must submit an amended complaint omitting the claims and parties dismissed pursuant to this order. Under the mandate rule, Plaintiffs' equal protection, substantive due process, New York Constitution, and all retaliation claims are dismissed. The ADA and Rehabilitation Act claims are dismissed as to all individuals in their personal capacities, and as to all individuals except Straub in their official capacities. Further, the state law claims under New York Civil Rights Law § 79-n, wrongful death, and negligence are dismissed as to all Defendants except Easton and Roewe. Punitive damage claims are dismissed as to Allegany-Limestone Central School District and the Board of Education of the Allegany-Limestone Central School District on the grounds that they are municipal entities. Otherwise, the motions are denied.

## VI.    ORDERS

IT HEREBY IS ORDERED that the motions to dismiss of Defendant Lowry (Docket No. 85) and the School Defendants (Docket No. 83) are GRANTED in part and DENIED in part, as stated above;

FURTHER, that the motions to dismiss of Defendants Roewe and Easton (Docket Nos. 82, 87) are DENIED;

FURTHER, that Plaintiffs' motion to amend (Docket No. 92) is GRANTED in part;

FURTHER, that Plaintiffs are directed to file their proposed Third Amended Complaint omitting the dismissed claims and parties, consistent with this Decision and Order no later than February 15, 2018.

SO ORDERED.

Dated: December 19, 2017
Buffalo, New York

 /s/William M. Skretny
 WILLIAM M. SKRETNY
 United States District Judge