UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

KERI SPRING, individually and as duly
appointed administrator of THE ESTATE
OF GREGORY SPRING,

          Plaintiffs,

v.

ALLEGANY-LIMESTONE CENTRAL
SCHOOL DISTRICT, THE BOARD OF
EDUCATION OF THE ALLEGANY-
LIMESTONE CENTRAL SCHOOL
DISTRICT, and KEVIN STRAUB,

          Defendants.

_____

14-CV-476 (JLS)

## DECISION AND ORDER

Before the Court is Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial. Dkt. 295. For the reasons that follow, Defendants' motion is DENIED in its entirety.

## BACKGROUND

In this action, Plaintiffs assert claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act") relating to alleged discriminatory treatment of Gregory Spring, a former student in the Allegany-Limestone Central School District. *See* Dkt. 97. On October 16, 2023, a jury returned a verdict in favor of Plaintiffs on their claim that the removal of Gregory Spring from the school's baseball team was

unlawfully discriminatory. *See* Dkt. 283. The jury found, in relevant part, that (1) Gregory Spring had a disability within the meaning of the statutes; and (2) Gregory Spring's disability was a motivating factor in the decision to remove him from the team. *See id.* The jury found for Defendants on the balance of the claims. *See id.*

On November 14, 2023, Defendants moved for judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial under Fed. R. Civ. P. 59(a).[1] Dkt. 295. Plaintiffs responded in opposition, Dkt. 304, and Defendants replied. Dkt. 305.

## DISCUSSION

Defendants assert three arguments in support of their motion: (1) Gregory Spring did not have a "qualifying disability;" (2) Gregory Spring did not suffer unlawful discrimination when he was removed from the school's baseball team; and (3) the Court improperly admitted hearsay evidence. *See* Dkt. 295. For the reasons discussed below, each argument fails.

### A. Legal Standards

#### 1. Rule 50 – Judgment as a Matter of Law

In order to "grant a judgment as a matter of law and overturn a jury's verdict, a court must conclude that, 'drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is [in]sufficient evidence to permit a rational juror to find in his favor.'" *Fink v. City of*

---

[1] Defendants' motion is a "renewal" of their unsuccessful motion for JMOL made "at trial, pursuant to Fed. R. Civ. P. 50(a)." Dkt. 295-11 at 6.

2

*New York*, 129 F. Supp. 2d 511, 514 (E.D.N.Y. 2001) (quoting *Sir Speedy v. L & P Graphics*, 957 F.2d 1033, 1039 (2d Cir.1992)). JMOL "should not be granted unless there is either 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture' or unless 'there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against it.'" *Id.* (quoting *Galdieri–Ambrosini v. Nat'l Realty and Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998)).

The "Second Circuit has further held that a party may request judgment as a matter of law post-trial 'only if it sought such relief before the jury retired to deliberate under Fed.R.Civ.P. 50(a)(2),' and limits the permissible scope of the later motion to those grounds 'specifically raised in the prior motion for [judgment as a matter of law].'" *Doe ex rel. A.N. v. E. Haven Bd. of Educ.*, 430 F. Supp. 2d 54, 57 (D. Conn. 2006), *aff'd* 200 F. App'x 46 (2d Cir. 2006) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001)). In other words, "a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997). Although the Second Circuit "review[s] the district court's denial of a Rule 50 motion *de novo*, [it is] bound by the same stern standards." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 456 (2d Cir. 2009).

3

2. Rule 59 – New Trial

A "motion for a new trial 'should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998)). The "general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Id.*

In "comparison to a Rule 50 motion for judgment as a matter of law, the Second Circuit has held that the standard for a Rule 59 motion in some respects is less onerous for the moving party in two ways." *Id.* First, unlike JMOL, "a new trial 'may be granted even if there is substantial evidence supporting the jury's verdict.'" *Id.* (quoting *DLC Mgmt. Corp.*, 163 F.3d at 134). Second, "in deciding a Rule 59 motion 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Id.* However, "the granting of a new trial is an extraordinary relief, and one that 'is properly granted only upon a showing of exceptional circumstances.'" *Id.*

B. Analysis

1. Qualifying Disability

Defendants challenge the jury's finding that Gregory Spring had a disability within the meaning of the ADA and Rehabilitation Act. Under both statues, "a

4

'disabled individual' as one who '(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.'" *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (citing 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2)). In "determining whether an individual has a disability" for purposes of the ADA and Rehabilitation Act, the Second Circuit applies a "three-step approach." *Id.* First, a plaintiff must "show that [he] suffers from a physical or mental impairment." *Id.* Second, he must "identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.'" *Id.* Third, he "must show that [his] impairment 'substantially limits' the major life activity previously identified." *Id.*

Here, Keri Spring testified that Gregory's conditions (including Tourette's Syndrome) affected his ability to read, learn, and communicate. *See* Dkt. 295-4 at 39.[2] There is no dispute that reading, learning, and communicating are "major life activities" within the meaning of the statutes. *See* 42 U.S.C. § 12102(2)(A) ("major life activities include, but are not limited to . . . learning, reading . . . [and] communicating . . ."). But Defendants contend that, due to lack of evidence as to the "substantial limitation" element, they are entitled to relief under Rules 50 and 59. The Court disagrees.

When "deciding whether an impairment 'substantially limits' a major life activity" the Second Circuit "construe[s] the term broadly in favor of expansive

---

[2] Page references refer to the CM/ECF stamped number in the header of each page.

5

coverage, to the maximum extent permitted.'" *Earl v. Good Samaritan Hosp. of Suffern NY*, No. 22-2505-CV, 2023 WL 8708417, at *2 (2d Cir. Dec. 18, 2023) (internal citation omitted) The "ADA Amendments Act of 2008 and its implementing regulations make clear that the term 'substantially limits' is 'not meant to be a demanding standard,' and that 'the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." *Samuels v. City of New York*, No. 22-CV-1904 (JGK), 2023 WL 5717892, at *7 (S.D.N.Y. Sept. 5, 2023) (citing 29 C.F.R. § 1630.2(j)(1)(i), (iii)). As such, an impairment is a "disability" if it substantially limits the ability of an individual to perform a major life activity "as 'compared to most people in the general population.'" *Id.* (quoting § 1630.2(j)(1)(ii)). And in light of Supreme Court precedent, "one thing is clear: the inquiry into whether a plaintiff is disabled under the ADA is a fact intensive inquiry that must be made on a case-by-case basis." *Wilson v. Aetna Life & Cas. Co.*, 195 F. Supp. 2d 419, 427 (W.D.N.Y. 2002) (citing various Supreme Court decisions).

Earlier in this case, the Second Circuit considered an appeal of the "District Court's denial of leave to amend the pleadings." *See Spring v. Allegany-Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 27 (2d Cir. 2016). And it vacated the District Court's ruling, which "dismissed Plaintiffs' ADA and Rehabilitation Act claims on the ground that the [proposed second amended] complaint failed to allege adequately that Gregory's named conditions substantially limited him in a major life activity." *Id.* That Court explained:

> The proposed second amended complaint explicitly identified the effects of Gregory's conditions on his major life activities of, *inter alia*, 'speaking,' 'learning,' 'concentrating,' and 'communicating,' identifying 'a long-standing record of suffering with a variety of motor and vocal tics' with a specific list of examples including 'outbursts,' 'involuntary knee slapping and eye blinking tics,' 'repetitive utterance of foul language,' and 'repetitive questioning.' It further alleged that the effects intensified 'during periods of stress or unfamiliar settings or situations' and that his disabilities 'substantially limited his ability to communicate' because 'he was unable to recognize emotions communicated by tone of voice and misunderstanding of social cues.'

The Court concluded that, "[t]aken together, the proposed amendments alleged sufficient facts to make plausible that the impact on Gregory's learning ability, which also prompted a need for special education services, constituted a substantial limitation." On the "facts alleged, therefore," the "proposed amendments would have sufficed to meet the requirements of a qualifying disability." *Id.*

At trial, Keri Spring testified that Gregory's "tics" included verbal and physical "outbursts." *See* Dkt. 295-3 at 9. She explained that when "he was agitated or in an uncomfortable position, [the tics] just got worse and worse and worse and would manifest" in more outbursts because "he couldn't comprehend what was happening." *Id.* She further testified that "he had a hard time knowing how to socially interact with both adults and students" because "his tics would be a distraction." *Id.* Gregory also "couldn't comprehend" what others "were saying to him" so "communicating back was also very difficult for him." *Id.* at 10. In

addition, he used "repetitive words"—which "tended to be" profanity—and "had no control over the impulse when it came out." *Id.* at 10-11. According to Ms. Spring, "puberty made things change" and the "repetitive words got worse." *Id.* at 9. She also testified that Gregory "would open his mouth all the time," "crack his neck" and "clap his hands repetitively.' *Id.* at 10. She described his behavior as "beyond controllable" and "involuntary." *Id.*

Based on the trial testimony, the jury could have reasonably concluded that Gregory Spring's ability to read, learn, and/or communicate was substantially limited by his Tourette's Syndrome or other conditions. *See Ray v. Kroger Co.*, 264 F. Supp. 2d 1221, 1226 (S.D. Ga. 2003) (holding that Tourette's Syndrome substantially limited communication where plaintiff had "uncontrollable daily outbursts of vocal tics, including profanity, vulgar words and racial slurs").

Based on that, and in light of the Second Circuit's prior ruling in this case—and "without setting the bar higher than Congress intended"—this Court concludes that "the jury had enough" to find that Gregory was "disabled." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 168 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008) (rejecting—based on testimony of Plaintiff, Plaintiff's mother, and Plaintiff's father—Defendants' "contention that the evidence did not suffice to demonstrate that [Plaintiff's] impairment substantially limited him with respect to an identified major life activity").[3]

---

[3] This Court rejects Defendants' argument that Plaintiffs needed to present "expert proof" to establish that one or more of Gregory's major activities was "substantially limited." Defendants cite no authority for this proposition. And in "appropriate

2. <u>Removal from the Baseball Team</u>

Defendants also contend that Plaintiffs "failed to establish that Gregory's removal from the baseball team was related, in any way, to discriminatory animus." Dkt. 295-11 at 11. The motion fails on this basis too.

To "establish a *prima facie* violation" of the ADA or Rehabilitation Act, a plaintiff must show that he "was denied the opportunity to participate in or benefit from defendants['] services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability.'" *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (quoting *Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)). Under the Rehabilitation Act, "the defendant must have discriminated against the plaintiff *solely* because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a *motivating factor* in the discrimination." *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 314 (W.D.N.Y. 2003), *aff'd*, 106 F. App'x 746 (2d Cir. 2004) (internal citation omitted) (emphasis added).

Here, Christopher Kenyon—the school's baseball coach—testified that Gregory was removed from the baseball team following an incident where, after Gregory had kicked another student in the groin, Gregory uttered profanity and

---

cases[,] factfinders may draw on their own experience to determine whether particular impairments constitute 'substantial limitations' of major life activities." *E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270(THK), 2002 WL 31011859, at *15 (S.D.N.Y. Sept. 9, 2002) (quoting *Witt v. Northwest Aluminum Co.*, 177 F.Supp.2d 1127, 1131 (D. Or. 2001)). The Court, therefore, "declines Defendant's invitation to impose on Plaintiff a rigid evidentiary requirement not specifically imposed by the regulations or the Second Circuit." *Id.* at *15.

told Kenyon to "suck it." *See* Dkt. 295-6 at 7-8. Kenyon explained that the specific reason Gregory was removed from the team was "the way [Gregory] acted after he kicked the other student[;] [t]he total disrespect in front of the rest of the players." *Id.* at 14-15. In other words, the grounds for the disciplinary action, according to Kenyon, was what Gregory *said* after the altercation with the other student—not for his role in the altercation itself. *See id.* at 27 (Q. "Now, you didn't kick out Mr. Gregory Spring because of him kicking the other student, you kicked him out because of what he said, correct?" A. "Correct." Q. "And what he said was he repeatedly said the F-word, true?" A. "Yes"). And although Kenyon maintains that he would have punished in the same way any student who acted as Gregory did, *see id.* at 43, he admits that he has never actually banned anyone else from the team. *Id.* at 41.

Kenyon further testified that he knew Gregory had a disability. *Id.* at 28. He also knew that Gregory had—at least at some point in the past—an Individualized Education Program ("IEP"). *Id.* at 27. And when asked if he knew that Gregory had Tourette's Syndrome, Kenyon responded: "If it was in his IEP, then yes." *Id.* at 36. Kenyon then confirmed that it "would [not have] made any difference to" him if he "knew that Greg's Tourette's caused him to do what he did to [Kenyon] verbally." *Id.* at 42.

Based on the testimony presented, the jury could have reasonably concluded that Gregory Spring's disability was a motivating factor in the decision to remove him from the baseball team. As discussed, there is ample evidence in the record

10

indicating that swearing and verbal outbursts were "tics" resulting from Gregory's affliction with Tourette's syndrome. *See, e.g.,* Dkt. 295-3 at 9-12. And the trial testimony supports that, despite Defendants' knowledge of Gregory's condition, he was removed from the team for this very type of behavior. For these reasons, this issue affords Defendants no basis for relief under Rule 50 or 59.

### 3. Hearsay Evidence

Lastly, Defendants argue that the Court "erroneously admitted hearsay evidence, and the admission of that evidence affected a substantial right." Dkt. 295-11 at 14. According to Defendants, the Court "permitted Keri, Eugene, and Julianne Spring to testify as to what Gregory allegedly told them," and "[t]his testimony was clearly offered for the truth of the matter, *i.e.*, to prove that Greg was bullied on the basis of his alleged disability, and that his alleged disability was the motivating factor" in the "decision to remove Gregory from the baseball team." *Id.* This argument also fails.

A new trial "may be warranted if substantial errors were made in admitting or excluding evidence." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014) (internal citation omitted). But in order for "evidentiary errors to form the basis for a new trial, the standard of Fed. R. Civ. P. 61 must be met." *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 451 F. Supp. 2d 576, 584 (S.D.N.Y. 2006). Under Rule 61, the Court "must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. According to the Second Circuit, a "substantial right is not implicated if there is no likelihood that the error or defect

11

affected the outcome of the case." *Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012). *See also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997) ("We will not conclude that a substantial right was affected unless it is likely that in some material respect the factfinder's judgment was swayed by the error") (internal citation omitted).

As an initial matter, the Court has already addressed this issue in its order on motions *in limine. See* Dkt. 230. In particular, the Court determined that the "statements by Gregory Spring to his family are admissible under Federal Rule of Evidence 807." *Id.* And it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

In any event, Defendants fail to demonstrate, at this juncture, that a new trial is warranted. The Court properly admitted the statements pursuant to the "residual exception" to the hearsay rule. Rule 807 of the Federal Rules of Evidence "provides that a hearsay statement is admissible when '(1) the statement is supported by sufficient guarantees of trustworthiness' and '(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.'" *Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *5 (E.D.N.Y. Feb. 10, 2022) (quoting Fed. R. Evid. 807(a)). In the Second Circuit, "hearsay may be admitted under the residual exception if '(i) it is particularly trustworthy; (ii) it bears on a material fact;

(iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party.'" *Id.* (quoting *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021)).

Here, Gregory's statements to his mother, father, and sister were spontaneous, close in time to the events being described, made in the privacy of the family home, and often accompanied by displays of emotion such as crying. *See, e.g.,* Dkt. 295-4 at 23. The statements, therefore, are supported by sufficient guarantees of trustworthiness. *See United States v. Cunningham*, 761 Fed. App'x 203 (4th Cir. 2019) (deceased declarant's statements to her mother about changes in the beneficiary status of her insurance policy were admissible under the residual exception because (1) "the mother and daughter shared a close relationship;" (2) the statements were made in their "mutual home," and (3) the declarant had an incentive to speak truthfully because she had an interest in sorting out an issue with her benefit and little, if any, motivation to lie); *Doe v. Darien Bd. of Educ.*, 110 F. Supp. 3d 386, 399–401 (D. Conn 2015) (statements of 12-year-old boy with Down Syndrome to his parents regarding sexual abuse by his school aide admissible under the residual exception due to spontaneity of the child's statements to his parents, the child's affect when making the statements as compared to his usual affect, changes in his behavior after the statements, and consistency in the core details of statements repeated numerous times to numerous people). In addition, the

statements are the most probative evidence Plaintiffs could offer as to the treatment that Gregory experienced, given that Gregory is no longer living.

Defendants also fail to establish an impact on a substantial right. They argue that a "substantial right" was "prejudiced" because the testimony at issue "was self-serving and entirely uncorroborated." Dkt. 295-11 at 16. But even if that is true, the jury was nonetheless entitled to consider the evidence and assign appropriate weight to it. *See Sec. & Exch. Comm'n v. Am. Growth Funding II, LLC*, No. 16-CV-828 (KMW), 2018 WL 6322145, at *4 (S.D.N.Y. Dec. 4, 2018) ("The [plaintiff] may view [the witness's] testimony as self-serving and uncorroborated, but that argument goes to the weight of the evidence, not its admissibility") (citing *United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017)).

In sum, because Defendants fail to identify an evidentiary error that affected a substantial right, a new trial is not warranted.

## CONCLUSION

For the reasons discussed above, Defendants' [295] motion is DENIED.

SO ORDERED.

Dated:   February 1, 2024
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE