UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KERI SPRING; EUGENE SPRING; JULIANNE SPRING; EUGENE SPRING
and KERI SPRING on behalf of Gregory Spring; and KERI SPRING,
as the duly appointed administrator of THE ESTATE OF GREGORY SPRING,

                                                  Plaintiffs,

**CASE NO.: 1:14-cv-00476**
-vs-                                                  **JLS/HKS**

ALLEGANY-LIMESTONE CENTRAL SCHOOL DISTRICT; THE BOARD
OF EDUCATION OF THE ALLEGANY-LIMESTONE CENTRAL
SCHOOL DISTRICT; KEVIN STRAUB, Principal; DIANE LOWRY,
Teacher Assistant; JOHN DOE(S) and JANE DOE(S), officials, administrators,
representatives, agents, employees, and servants of the Allegany-Limestone
Central School District; MICHAEL EASTON; JACOB ROEWE;
and JOHN DOE(S) and JANE DOE(S); students of the Allegany-Limestone High School,

                                                  Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION**

---

Marina A. Murray, Esq.
**SUGARMAN LAW FIRM, LLP**
Attorneys for School District Defendants
1600 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 847-2523
mmurray@sugarmanlaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

THE PLAINTIFF'S ATTORNEY'S FEES AWARD MUST BE REDUCED . . . . . . . . . . . . . . . 1

    A.    Plaintiff's Counsel's Hourly Rate and
            All Travel Expenses Should Be Reduced  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Court Should Impose an Overall Reduction in Attorney's Fees . . . . . . . . . . . 4

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v.*
  *County of Albany*, 522 F.3d 182, 190 (2d. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Barfield v. NYC Health & Hosp. Corp.*,
  537 F.3d 132, 151-52 (2d. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Cajero Torres v. Sushi Sushi Holdings, Inc.*,
  2022 WL 278865, *14 (S.D.N.Y. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13

*Capax Discovery, Inc. v. AEP RSD Investors, LLC*,
  2023 WL 140528, *4 (W.D.N.Y. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*DIRECTV, LLC v. Wright*,
  2020 WL 289156, *1 (W.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Farrar v. Hobby*,
  506 U.S. 103, 114 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hensley v. Eckerhart*,
  461 U.S. 424, 434 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714, 717-19 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Klimbach v. Spherion Corp.*,
  467 F. Supp. 2d 323, 331 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Krause v. Kelahan*,
  2022 WL 306365, *1 (N.D.N.Y. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kreisler v. Second Ave. Diner Corp.*,
  2013 WL 3965247, *4 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Makinen v. City of New York*,
  2016 WL 1451543, *1 (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*New York v. Grand River Ent. Six Nations, Ltd.*,
  2021 WL 4958653, *1 (W.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Perez v. County of Rensselaer*,
  2021 WL 3022115, *5 (N.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Quaratino v. Tiffany & Co.*,
  166 F.3d 422, 425 (2d. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Reiter v. Maxi-Aids, Inc.*,
  2019 WL 1641306, *5 (E.D.N.Y. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*West v. DOCCS*,
  2018 WL 2901330, *1 (W.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10, 12

## PRELIMINARY STATEMENT

The following memorandum of law is respectfully submitted on behalf of defendants Allegany-Limestone Central School District ("School District"), the Board of Education of the Allegany-Limestone Central School District, and Kevin Straub, Principal (collectively "School District Defendants"), in opposition to the plaintiffs' motion for attorneys' fees and expenses pursuant to 42 U.S.C. § 12205 and Fed. R. Civ. P. 54(d).

## POINT I

### THE PLAINTIFF'S ATTORNEY'S FEES AWARD MUST BE REDUCED

Under the ADA and Rehabilitation Act, a district court may, in its discretion, award reasonable attorney's fees and costs to a prevailing party. *See West v. DOCCS*, 2018 WL 2901330, *1 (W.D.N.Y. 2018). District courts are awarded considerable discretion in determining the amount of attorney's fees that is appropriate in a given case. *See, e.g., Makinen v. City of New York*, 2016 WL 1451543, *1 (S.D.N.Y. 2016). Notably, the burden rests on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Krause v. Kelahan*, 2022 WL 306365, *1 (N.D.N.Y. 2022). The court should calculate attorney's fees under the "lodestar" approach, meaning a "presumptively reasonable fee" is determined by multiplying the prevailing attorney's "reasonably hourly rate" by the "reasonable number of hours required by the case." *See Capax Discovery, Inc. v. AEP RSD Investors, LLC*, 2023 WL 140528, *4 (W.D.N.Y. 2023). In this case, plaintiff is seeking $451,688.94 in attorney's fees. However, for the reasons set forth more fully below, the plaintiff's attorney's fees should be significantly reduced.

**A.**

**Plaintiff's Counsel's Hourly Rate and All Travel Expenses Should Be Reduced**

The court should begin its calculation of attorney's fees by determining the reasonable hourly rate for the prevailing attorney(s) and paralegal(s). "The reasonable hourly rate is the rate a paying client would be willing to pay, bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *See Capax, supra*; quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d. Cir. 2008). In determining an attorney's "reasonable hourly rate," the court should consider the following factors:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the level of skill required to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the attorney's customary hourly rate;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or the circumstances;
(8) the amount involved in the case and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*See Capax, supra*, citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Moreover, it is well-settled that courts in the Second Circuit generally reduce attorney's fee for travel time by 50%. *See, e.g., Makinen, supra,* at *1; *Capax, supra*; *Reiter v. Maxi-Aids, Inc.*, 2019 WL 1641306, *5 (E.D.N.Y. 2019).

2

Here, plaintiff is seeking to recover $500/hour for Ms. Bosman (lead counsel); $250/hour for Mr. Strum (associate counsel); and $150/hour for Mr. Fernicola (paralegal). Plaintiff submits that these rates are standard in the Western District of New York, and they are justified in light of the difficult nature of prosecuting civil rights claims. In support of the requested rates, plaintiff relies upon three Western District cases; however, none of these cases involve civil rights or ADA/RA claims. Instead, all of these cases involve complex commercial litigation claims, and attorneys litigating these cases generally charge a much higher hourly rate than those in the field of civil rights litigation. *See Capax, supra,* at *1 (involving Capax's acquisition of defendant Zovy and various breach of contract claims); *New York v. Grand River Ent. Six Nations, Ltd.*, 2021 WL 4958653, *1 (W.D.N.Y. 2021) (involving alleged violations of the Contraband Cigarette Trafficking Act and the Prevent All Cigarette Trafficking Act); and *DIRECTV, LLC v. Wright*, 2020 WL 289156, *1 (W.D.N.Y. 2020) (involving the unauthorized transmittal of plaintiff's satellite television programming to subscribers of the defendant's cable company).

The School District Defendants submit that this Court should reduce the hourly rate for plaintiff's attorneys and paralegal, bearing in mind the customary hourly rate for this type of work, plaintiff's limited success at trial, and recent awards in similar cases. For example, in *Perez v. County of Rensselaer*, a Title VII gender discrimination case brought against the County of Rensselaer, plaintiff's counsel's hourly rates were set as follows: $325/hour for Ms. Bosman; $165/hour for Mr. Strum; and $90/hour for Mr. Fernicola. *See Perez v. County of Rensselaer*, 2021 WL 3022115, *5 (N.D.N.Y. 2021). These rates, which were actually awarded in the aforementioned case, accurately reflect the hourly market value for a civil rights litigator in New York. The School District Defendants respectfully submit that the rates applied in *Perez* should

3

also be applied here. This requested reduction also takes into account that plaintiff was only successful on one of two remaining claims at the time of trial. Should the Court agree with these proposed rates, then plaintiff's total attorney's fee amount should be reduced to $278,194.85.

Counsel's fees for travel should also be reduced by 50%. All three timekeepers (Ms. Bosman, Mr. Strum, and Mr. Fernicola) billed their travel time at 100%, which is not supported by the case law. In fact, on October 13, 2023, counsel appears to have billed twice for their travel from Buffalo, New York to Blossvale, New York. On October 16, 2023, counsel again double billed for their travel to and from Buffalo. These entries certainly should be excluded in their entirety. Assuming the hourly rates of all attorneys and paralegals are reduced to the rates referenced above, then counsel's travel costs should total approximately $32,152.25.[1] However, counsel should be permitted to only recover 50% of these fees ($16,076.12). This would further reduce the lodestar amount to $262,118.85.

## B.

### The Court Should Impose an Overall Reduction in Attorney's Fees

In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable and unsuccessful claims. *See Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 331 (W.D.N.Y. 2006); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422,

---

[1] The School District Defendants calculated the following number of travel hours for each attorney: 66.35 hours for Ms. Bosman; 47.7 hours for Mr. Strum; and 30.2 hours for Mr. Fernicola. However, should the Court not be inclined to reduce plaintiff's hourly rate as requested by the School District Defendants, then the total amount of travel time billed at the rates requested by plaintiff's counsel is $52,337.50. This number should be reduced by 50% to $26,168.70.

425 (2d. Cir. 1999). Additionally, the court may reduce a fee request on a percentage basis due to vague time entries and/or inappropriate block billing. *See id.*

However, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained." *See West v. DOCCS*, 2018 WL 2901330, *2 (W.D.N.Y. 2018), citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). "In some circumstances, even a plaintiff who formally 'prevails' should receive no attorney's fees at all." *See id.;* quoting *Farrar* at 115. Consequently, the Supreme Court developed a two-part test for determining whether a plaintiff's partial success requires a reduction in the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). First, the district court must examine whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff actually succeeded. *See id.* The hours spent on such unsuccessful claims should be excluded from the fee calculation. *See id.* Second, the district court must determine whether there are any unsuccessful claims interrelated with the successful claims. *See id.* If so, then the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. *See id.* Notably, attorney's fees may only be awarded for a prevailing party's unsuccessful claims when these claims are "inextricably intertwined" and "involve a common core of facts or are based on related legal theories" to those successful claims. *See Quaratino*, 166 F.3d at 425.

It is within the court's discretion to decide whether the hours spent on litigating unsuccessful and/or unrelated claims should be severed, or whether an across-the-board reduction should be utilized because the plaintiff achieved only a small degree of success. *See Kreisler v. Second Ave. Diner Corp.*, 2013 WL 3965247, *4 (S.D.N.Y. 2013); *see also West,*

5

*supra.* "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." *See Barfield v. NYC Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d. Cir. 2008).

When a case has been litigated over the course of many years, and the plaintiff is only successful on one claim of several, the court should impose a substantial overall reduction in the plaintiff's attorney's fees. In *West*, the plaintiff alleged several violations of his constitutional rights pursuant to 42 U.S.C. § 1983. *See West, supra,* at 1*. Twelve years after the initial complaint was filed, this Court granted partial summary judgment in favor of the defendant, dismissing six out of the seven claims asserted against the defendant in the plaintiff's Amended Complaint. *See id.* Judgement was later entered against the defendant on the one remaining claim, and plaintiff thereafter sought recovery of attorney's fees. *See id.*

In opposition to West's motion, the defendant argued that six of the seven legal theories presented in the plaintiff's complaints involved claims that were factually unrelated to plaintiff's successful ADA claim. *See id.* at *4. The unrelated claims involved separate incidents, occurred at different times, and were lodged against different defendants. *See id.* The defendant emphasized that the plaintiff's unsuccessful claims arose out of different legal theories and could have been raised in a completely separate lawsuit. *See id.* The Western District agreed that the plaintiff had achieved only limited success, and therefore, an 85% overall reduction in plaintiff's attorneys' fees was awarded. *See id.; see also Cajero Torres v. Sushi Sushi Holdings, Inc.*, 2022 WL 278865, *14 (S.D.N.Y. 2022) (imposing a 90% reduction in plaintiff's attorney's fees when plaintiffs were unsuccessful on their most sweeping claims, and plaintiff's submitted bills were vague and consisted of inappropriate clerical work, redundancies, and duplications).

6

Here, plaintiff has submitted 75 pages of billing entries that date from August 16, 2013 to March 13, 2024. Many of these entries are incredibly vague, excessive, take advantage of inappropriate block billing strategies, and account for duplicative or redundant work that is completed by all three timekeepers. These flawed entries are riddled throughout counsel's submitted invoices; however, the most glaring examples of block and/or redundant billing are as follows: drafting of the Notice of Claim in September 2013; conferring with the client in September 2013; drafting the Complaint in June 2014; analysis of the School District Defendants' Motion to Dismiss and drafting the opposition thereto in August 2014; analysis of the School District Defendants' Second Motion to Dismiss and drafting the opposition thereto in September 2014; drafting the appellate brief in January 2016 through March 2016; analysis of the School District Defendants' Third Motion to Dismiss and drafting the opposition thereto in October 2016; drafting and reviewing of discovery from June 2018 to June 2019; preparation for the EBT of Karen Geelan in February 2021; analysis of the School District Defendants' Motion for Summary Judgment and drafting the opposition thereto in June 2021 to August 2021; drafting and review of the Motions in Limine in June 2023; and counsel's trial preparation entries throughout September and October 2023.

Plaintiff's invoices are also filled with vague entries, particularly with regards to any entries for email correspondence or telephone conversations between counsel and her client. Some examples include (but are not limited to) the entries found on 8/26/16, 9/8/16, 4/2/19, 4/4/19 5/14/19, 5/29/19, 6/18/19, 4/7/20, 4/23/20, 5/17/20, 5/20/20, 11/17/20, 2/16/21, 2/23/21, 3/9/21, 4/13/21, 4/28/21, 5/19/21, 6/7/21, 7/30/21, 8/9/21, 9/8/21, 9/9/21, 9/29/21, 12/17/21, 1/14/22, 5/20/22, 8/17/22, 11/21/22, 12/13/22, 6/5/23, 7/5/23, 7/24/23, 7/31/23, 9/14/23, 9/22/23,

9/29/23, 10/1/23, 1/8/24, 2/8/24, 2/22/24, 2/27/24, 2/28/24, 3/8/24. Counsel also includes dozens of entries for clerical/administrative work performed by Mr. Fernicola and/or Mr. Strum, including scheduling of depositions and conferences, assembly of exhibits for motions and trial, filing, preparing HIPPA authorizations, calendaring deadlines, preparing discovery verifications, and preparing the retainer agreement.

Most importantly though, counsel seeks hundreds of thousands of dollars in attorney's fees despite achieving very limited success at trial and without any acknowledgement that all "bullying" claims were dismissed. It cannot be disputed that the heart of plaintiff's case has always been that Gregory, while a student at Allegany-Limestone Central School District, was subjected to bullying on the basis of his disability, and that the School District Defendants were deliberately indifferent to this bullying. Review of the pleadings, discovery responses, deposition testimony, and trial testimony confirms that this case has always been one about bullying, and in particular, alleged bullying of Gregory by former defendants Michael Easton and Jacob Roewe.

Plaintiff commenced this litigation in June 2014 and asserted twelve (12) causes of action against more than twenty (20) defendants, including each individual member of the Allegany-Limestone Board of Education. Throughout a series of pre-Answer motions to dismiss, plaintiff's claims were drastically narrowed prior to the initiation of discovery. For example, all of plaintiff's federal and New York State constitutional claims were dismissed, and plaintiff's claims against all school board members, as well as Christopher Kenyon, Eric Hemphill, and Kevin Straub in his individual capacity, were dismissed. The Third Amended Complaint, which was the operative pleading in this matter, alleged one cause of action against the School District Defendants for violation of the ADA and one cause of action against the

8

School District Defendants for violation of the RA. The plaintiff maintained claims against defendants Easton and Roewe for violation of New York Civil Rights Law § 79-n, wrongful death, negligence, and gross negligence, and a claim against defendant Lowry for intentional infliction of emotional distress ("IIED"). Easton and Roewe reached a settlement agreement with plaintiff's counsel prior to trial, and all claims against Diane Lowry were dismissed pursuant to her pre-trial motion for summary judgment.

From the time this case was initiated in June 2014, up until the conclusion of the trial in October 2023, plaintiff's main allegation has always been that Gregory was relentlessly bullied by Michael Easton and Jacob Roewe during the 2012-2013 school year. Michael Easton and Jacob Roewe were both named defendants in this action, and they were deposed at length regarding the bullying allegations. Keri Spring, Kevin Straub, Karen Geelan, and Diane Lowry also provided lengthy deposition testimony that focused almost entirely on the plaintiff's bullying allegations, with only occasional references to the "Baseball Incident." Remarkably, plaintiff never even sought to depose Christopher Kenyon or Eric Hemphill, the School District employees who were actually involved in the "Baseball Incident." Plaintiff's own trial testimony, as well as the trial testimony of many of plaintiff's witnesses (including former principal Timothy McMullen, family friend Janet Lynn Mitchell, and classmate Brendan Scott) was also predominantly focused on bullying.

However, as this Court is aware, the jury rejected plaintiff's claim that the School District Defendants violated the ADA or the RA by showing deliberate indifference to severe, pervasive, and objectively offensive bullying that Gregory allegedly experienced. Although the jury found against the School District Defendants for the direct discrimination claim arising

9

from the "Baseball Incident," they awarded plaintiff only nominal damages. The fact that the jury awarded plaintiff only $25,000 to Gregory Spring's estate after ten (10) years of litigation, twelve (12) initial causes of action, and more than twenty (20) initial defendants, speaks volumes. This Court must consider the quantity and the quality of the relief actually obtained by the plaintiff when determining the amount of attorney's fees to award. *Cf. Barfield, supra*. Plaintiff's counsel is seeking to recover eighteen (18) times the amount her clients were actually awarded (25,0000 x 18 = 450,000). Such an award would be drastically disproportionate and, frankly, inequitable. After multiple successful motions brought by the School District Defendants, plaintiff's twelve (12) claims were whittled down to one. At trial, plaintiff obtained a nominal award on one small part of the remaining claim. Given this incredibly limited degree of success, any award for attorney's fees should be significantly reduced.

The School District Defendants further submit that all time billed for any work done in relation to these bullying claims, including all paper discovery, depositions, and motions related to former defendants Michael Easton, Jacob Roewe, and Diane Lowry, must be stricken. However, given the age of this case and the volume of plaintiff's invoices, an overall reduction in plaintiff's attorney's fees would likely be more appropriate.

Much like *West, supra*, the plaintiff here succeeded on only one small claim after a decade of litigation, despite initially bringing twelve (12) causes of action against the School District Defendants and numerous other defendants. In its motion, plaintiff submits that all "fees and expenses sought are contemporaneously attributable to the claims that succeeded and/or were inextricably intertwined with all other claims and are reasonable." However, plaintiff does not provide any argument whatsoever as to how the "deliberate indifference"

10

bullying claim is at all related to, let alone "inextricably intertwined" with, the direct discrimination claim.

The "Baseball Incident" was factually unrelated to all of plaintiff's bullying claims and could have been brought as an entirely separate lawsuit. The "Baseball Incident" arose out of one single event that occurred in April 2012 and involved Coach Kenyon's decision to remove Gregory Spring from the baseball team after Gregory assaulted a teammate and disrespected the Coach. The jury found that Gregory's disability was a motivating factor in Coach Kenyon's decision to remove Gregory from the school's baseball team.  Despite this, plaintiff's counsel's submitted invoices include hundreds of hours of work billed for various unrelated claims and/or unrelated parties.

Plaintiff's bullying claim involved events that allegedly occurred between September 2012 and June 2013 between Michael Easton, Jacob Roewe, and Gregory Spring. These events occurred months after the "Baseball Incident," and did not involve Coach Kenyon or anyone else from the School District's athletic department. There was no overlap whatsoever between what happened with Easton and Roewe during Gregory's sophomore year of high school, and what happened with Gregory during his freshman year on the JV baseball team. Plaintiff's bullying claim, and the claim arising from the "Baseball Incident," do not involve any common core of facts. In fact, these two claims involve entirely different legal theories. The "direct discrimination" claim involved one simple question: was Gregory Spring's disability a motivating factor in the decision to remove him from the school's baseball team? The bullying claim, however, involved a completely different analysis, and required the jury to resolve a number of entirely separate questions: (1) was Gregroy Spring harassed on the basis of his

11

disability? (2) was that harassment severe, pervasive, and objectively offensive? (3) did the defendants have actual knowledge of that harassment (4) did the defendants exercise substantial control over both the harasser and the context in which that harassment occurred?, and (5) were the defendants deliberately indifferent to that harassment?

Additionally, any allegations against Diane Lowry, which arose out of comments she wrote on Gregory's online obituary, have absolutely no connection to the "Baseball Incident." Plaintiff also appears to bill for work arising out of the unrelated wrongful death action that is currently pending in New York State Supreme Court. This includes plaintiff's investigation into and later deposition of Gregory's ex-girlfriend, Morgan Gleason. Ms. Gleason was not involved with Gregory until September 2012, many months after the "Baseball Incident" even occurred. Similarly, counsel's invoice's include hours dedicated to the review and investigation of the New York State Police file related to Gregory's suicide in June 2013, which is wholly unrelated to the April 2012 "Baseball Incident." Plaintiff appears to have made no effort whatsoever to edit the invoices to ensure that entries for unrelated or unsuccessful claims were removed, and instead, she simply argues that all claims are "inextricably intertwined." Should this Court not agree that the requested attorney's fees must be significantly reduced, then plaintiff's counsel should be required to produce revised invoices that exclude time billed for all unrelated and unsuccessful claims.

It is respectfully submitted that, in light of the above, this Court should follow the rulings in *West* and *Cajero* and impose a 90% reduction in requested attorney's fees. As in *Cajero* and *West*, plaintiff's counsel's has submitted invoices that include hundreds of hours billed for unsuccessful claims that are entirely severable and in no way intertwined with the

12

plaintiff's "direct discrimination" claim. Counsel's submitted invoices also contain vague, duplicative entries, block billing, inappropriate travel billing, and excessive administrative billing. *Cf. Cajero, supra*. A 90% reduction would provide for a fee award of approximately $26,000, which the School District Defendants submit is appropriate and commensurate in light of the $25,000 nominal damages award. Even if this Court disagrees that counsel's hourly rate should be reduced as discussed in Point I, *supra*, the 90% reduction should still be imposed. This would provide for a fee aware of approximately $45,000.

## CONCLUSION

For the reasons set forth above, the amount of attorney's fees requested by plaintiff's counsel should be significantly reduced.

Dated: May 30, 2024

Respectfully submitted,

*/s Marina A. Murray*
Marina A. Murray, Esq.
**SUGARMAN LAW FIRM, LLP**
Attorneys for School District Defendants
1600 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 847-2523
mmurray@sugarmanlaw.com

13