UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KERI SPRING, individually and as duly
appointed administrator of THE ESTATE
OF GREGORY SPRING,

                                                    14-CV-476 (JLS)

        Plaintiffs,

v.

ALLEGANY-LIMESTONE CENTRAL
SCHOOL DISTRICT, THE BOARD OF
EDUCATION OF THE ALLEGANY-
LIMESTONE CENTRAL SCHOOL
DISTRICT, and KEVIN STRAUB,

        Defendants.
_____

## AMENDED DECISION AND ORDER

Before the Court remains Plaintiffs' motion for attorneys' fees and expenses. Dkt. 320. For the reasons that follow, Plaintiffs' motion is GRANTED in part and DENIED in part, such that Plaintiffs may recover the amount of **$271,013.36.**

## BACKGROUND

Plaintiffs commenced this action on June 17, 2014, asserting twelve causes of action against Allegany-Limestone Central School District (and others) relating to alleged discriminatory treatment of Gregory Spring, a former student in the Allegany-Limestone Central School District. See Dkt. 1.

Following dispositive motions, the only remaining claims were Plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA")

and the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("RA"), as asserted against Defendants Allegany-Limestone Central School District, The Board of Education of the Allegany-Limestone Central School District, and Kevin Straub. *See* Dkt. 195; Dkt 200. These claims were based solely on (1) the alleged discriminatory removal of Gregory Spring from the school's baseball team; and (2) Defendants' alleged deliberate indifference to disability-based harassment of Gregory Spring during the period from June 17, 2011, to June 17, 2013. *See id.*

A jury trial commenced on October 2, 2023. *See* Dkt. 259. On October 16, 2023, the jury returned a verdict in favor of Plaintiffs on their claim that the removal of Gregory Spring from the school's baseball team was unlawfully discriminatory—and awarded $25,000 in damages. *See* Dkt. 283. The jury found for Defendants on the balance of the claims. *See id.*

On April 29, 2024, Plaintiffs moved for attorneys' fees and expenses pursuant 42 U.S.C. § 12205 and Fed. R. Civ. P. 54(d). Dkt. 320. Plaintiffs request $451,688.94 for work performed by three attorneys and one paralegal. *See* Dkt. 320-1 ¶ 4. Defendants opposed the motion, arguing that "the amount of attorney[s'] fees requested" should be "significantly reduced" for several reasons. *See* Dkt. 321 at 17. Specifically, Defendants ask the Court to "impose a 90% reduction." *Id.* at 16.

On June 10, 2024, this Court issued a Decision and Order granting in part and denying in part Plaintiffs' motion, such that Plaintiffs could recover $90,337.79. Dkt. 322. Plaintiffs appealed. *See* Dkt. 324. On May 1, 2025, the Second Circuit

issued a mandate vacating and remanding the judgment as to attorneys' fees. *See* Dkt. 327.[1]

## DISCUSSION

**A. Legal Standards**

Under the "ADA and the Rehabilitation Act, a district court may, in its discretion, award reasonable attorney's fees and costs to a prevailing party." *West v. DOCCS*, No. 05-CV-447-FPG, 2018 WL 2901330, at *1 (W.D.N.Y. June 12, 2018) (citation omitted). *See* 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794-a(b) (RA). A "prevailing party is one who has favorably effected a material alteration of the legal relationship of the parties' by court order." *Garcia v. Hebert*, 622 F. App'x 21, 22 (2d Cir. 2015) (citation omitted).[2] The Second Circuit's "review of a district court's fee award is highly deferential." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

The "initial estimate" of reasonable fees is governed by the "lodestar approach." *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 163 (W.D.N.Y. 2005) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992)). Under "this approach, 'the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*,

---

[1] The parties agree that no further briefing on this issue is necessary.

[2] Defendants do not dispute that Plaintiffs "prevailed" within the meaning of the ADA and RA. As discussed, the jury found in favor of Plaintiffs on their claim that the removal of Gregory Spring from the school's baseball team was unlawfully discriminatory. *See* Dkt. 283.

3

461 U.S. 424, 433 (1983)). This figure is the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

The lodestar method, however, is not "conclusive in all circumstances." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) (citation omitted). And the "burden rests on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Krause v. Kelahan*, No. 6:17-CV-01045, 2022 WL 306365, at *1 (N.D.N.Y. Feb. 2, 2022).

**B. Analysis**

Plaintiffs request $451,688.94 in fees and expenses based on work performed by: (1) senior attorney A.J. Bosman ("Bosman") at an hourly rate of $500; (2) associate Robert Strum ("Strum") at an hourly rate of $250; (3) former associate Daniel Flynn ("Flynn") at an hourly rate of $250; and (4) paralegal Anthony Fernicola ("Fernicola") at an hourly rate of $150. *See* Dkt. 320-1 ¶¶ 4, 7, 9, 10. Defendants argue that these requests are excessive on several grounds. *See* Dkt. 321.

1. <u>Hourly Rates</u>

Defendants assert that the hourly rates that Plaintiffs seek are excessive. *See* Dkt. 321 at 6-8. A "reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

4

A "district court may also use its knowledge of the relevant market when determining the reasonable hourly rate." *McDonald*, 450 F.3d at 96–97.

Here, the rates that Plaintiffs request for work performed by Bosman, Strum, Flynn, and Fernicola exceed rates that courts in this district have recently awarded to Bosman and her staff for their work in connection with civil rights actions. *See, e.g., Perez v. Cnty. of Rensselaer, New York*, No. 1:14-CV-950, 2021 WL 3022115, at *5 (N.D.N.Y. July 16, 2021) ($350 per hour for Bosman; $165 per hour for Strum; $90 per hour for Fernicola); *Miller v. City of Ithaca, New York*, No. 310CV597GLSDEP, 2017 WL 61947, at *3 (N.D.N.Y. Jan. 5, 2017) ($225 per hour for Bosman; $120 per hour for associate; $80 per hour for paralegal).

Plaintiff does not explain why significantly higher rates would be appropriate in this case. Nevertheless, the requested hourly rates are not facially excessive for recent years. But much of the requested time occurred over various parts of the last decade. As detailed below, "given the other issues with plaintiff's fee request," the Court "elects to impose a percentage reduction in her total requested fees and expenses rather than alter the hourly rates she seeks." *Krause*, 2022 WL 306365, at *2 (N.D.N.Y. Feb. 2, 2022).

2. <u>Reasonableness of Hours Expended</u>

Defendants argue that an overall reduction of the fee amount is appropriate due to Plaintiffs' limited success at trial—and, furthermore, because Plaintiffs' request is based on time entries that are vague, excessive, duplicative, and take

5

advantage of inappropriate block billing strategies. *See* Dkt. 321. Defendants also argue that all travel expenses should be reduced. *See id.*

It is "well settled in this Circuit that in evaluating the reasonableness of a sizeable fee application, a court need not examine each and every billing entry." *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (citing *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). Instead, a "district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald*, 450 F.3d at 96 (citations omitted). And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Murray v. UBS Sec., LLC*, No. 14 CIV. 927 (KPF), 2020 WL 7384722, at *11 (S.D.N.Y. Dec. 16, 2020) (citation omitted).

### a. Degree of Success

First, a reduction to the fee award is warranted due to the degree of Plaintiffs' success in this case. The "degree of success obtained" by a prevailing party is "critical" in assessing the reasonableness of a fee request. *West v. DOCCS*, No. 05-CV-447-FPG, 2018 WL 2901330, at *2 (W.D.N.Y. June 12, 2018) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). A district court's "assessment of the 'degree of success' achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). Both "the quantity and quality of relief obtained,

6

as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." *Id.* (citation omitted). This "comparison 'promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case.'" *Id.* (quoting *Farrar*, 506 U.S. at 114–15).

Here, Plaintiffs commenced this litigation in 2014, asserting twelve causes of action against more than 20 Defendants. *See* Dkt. 1. By the time the case went to trial in 2023, only four defendants remained, and the sole claims against them were ADA and RA claims based on (1) the alleged discriminatory removal of Gregory Spring from the school's baseball team; and (2) Defendants' alleged deliberate indifference to disability-based harassment of Gregory Spring during an approximately two-year period. *See* Dkt. 195; Dkt 200. The jury found in favor of Plaintiffs <u>only</u> on the claims arising out of the baseball incident, which was a much smaller focus of the trial. *See* Dkt. 283.[3]

As emphasized by the Second Circuit, however, Plaintiffs pursued a "successful appeal" which "reversed some of these dismissals." *Spring on behalf of Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 23-7821, 2025 WL 1077347, at *3 (2d Cir. Apr. 10, 2025) (citing *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 27–28 (2d Cir. 2016)). At trial, moreover, Plaintiffs "proved that Gregory was disabled and that Allegany-Limestone intentionally discriminated against him." *Id.* And although Plaintiffs' "deliberate indifference claim was unsuccessful,"

---

[3] At least three-fourths of the trial's focus was on item (2).

this claim "shared a common core of facts and law with the discrimination claim—most notably, the existence of Gregory's disability." *Id.* (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004)).

In sum, considering "the quantity and quality of relief" Plaintiffs have obtained, "as compared to what the [P]laintiff[s] sought to achieve as evidenced in [their] complaint," reduction of any fee award remains appropriate. *See Barfield*, 537 F.3d at 152.

### b. *Deficiencies in Time Records*

Further reduction is appropriate due to various deficiencies in Plaintiffs' time records. Courts should "exclude hours" that "were 'excessive, redundant, or otherwise unnecessary.'" *Anderson*, 388 F. Supp. 2d at 163 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In addition, "[b]lock billing, in which a timekeeper improperly lumps several discrete acts together into a single large time entry, obscures fee requests and makes it harder for courts to assess whether they are reasonable." *Krause*, 2022 WL 306365, at *2. As a result, "courts often assess blanket reductions where a party requesting fees engages in this practice." *Id.* (collecting cases).

Further, if "time records lack such specificity that the court is unable to determine a proper fee allocation, then plaintiffs' fee recovery may be reduced." *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19CIV2532PAERWL, 2022 WL 2788655, at *18 (S.D.N.Y. July 15, 2022) (citation omitted).

As to travel time—although "it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent." *Siegel v. Bloomberg L.P.*, No. 13CV1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) (collecting cases).

Here, the invoice submitted with Plaintiff's motion is deficient in several ways. *By way of example only*, on September 22, 2023, Ms. Bosman separately billed for 19 e-mail correspondences—providing only vague descriptions as to the nature or purpose of each communication. *See* Dkt. 320-2 at 61-62. The timekeepers also billed for numerous "phone calls," while providing descriptions so vague that it is impossible to determine the appropriateness of such charges. *See, e.g., id.* at 74 (billing for "Phone Call: PC client re: status"). In addition, the timekeepers billed travel time at their full hourly rates. It also appears that, on at least two dates (October 13 and 16, 2023), travel time may have been double billed. But again, due to the vagueness of the time entries, the Court cannot discern with certainly whether this is the case.

As emphasized by the Second Circuit, however, "a court does not *have carte blanche* to make these reductions." *Spring on behalf of Spring*, 2025 WL 1077347, at *2. Rather, "its reduction must be proportionate to the degree of success or the billing deficiencies it identifies." *Id.* (citing *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)). And in this case, "the vague timekeeping entries were not so severe as to 'obscure redundant or unreasonable billing practices.'" *Id.* (quoting *Raja*, 43 F.4th at 89–90).

9

## CONCLUSION

In sum, and based on additional review of the motion, instead of "engaging in an interminable review of the billing records and making a corresponding reduction to the hours in line-by-line fashion," the "sane approach" in this case "is to simply impose a percentage reduction on the lodestar." *Miller*, 2017 WL 61947, at *4 (citing *McDonald*, 450 F.3d at 96).

Accounting for all of the above, and for the Second Circuit's vacatur and guidance—including each item it emphasized—this Court has reassessed the fees and costs reduction.

As such, the Court imposes a **40 percent reduction** in the amount sought—which results in an award of **$271,013.36**. In this Court's sound judgment, this amount is sufficient to account for the Second Circuit's areas of concern. *See West*, 2018 WL 2901330, at *6 (imposing an "across-the-board 85% reduction of the award" to account for Plaintiff's "limited success on the factually and legally distinct ADA/Section 504 claim"); *Struthers v. City of N.Y.*, No. 12-CV-242, 2013 WL 5407221, at *10 (E.D.N.Y. Sept. 25, 2013) (finding "defendants' request to reduce the lodestar figure by 80% to be reasonable in light of [plaintiff]'s limited success" where "it would be nearly impossible to deduct from the lodestar a specific number of billed hours that represents work performed on [Plaintiff's] unsuccessful claims").

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' [320] motion is GRANTED to the extent that attorneys' fees and expenses in the amount of **$271,013.36** are imposed against Defendants Allegany-Limestone Central School

District, The Board of Education of the Allegany-Limestone Central School District, and Kevin Straub. The [320] motion is otherwise DENIED.

SO ORDERED.

Dated: May 16, 2025
       Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE